08-18-00134-CV

ACCEPTED
08-18-00134-CV
EIGHTH COURT OF APPEALS
EL PASO, TEXAS
8/31/2018 3:27 PM
DENISE PACHECO
CLERK

CAUSE NO. 08-18-00134-CV

FILED IN
8th COURT OF APPEALS
EL PASO, TEXAS

8/31/2018 3:27:32 PM

DENISE PACHECO
Clerk

IN THE COURT OF APPEALS
FOR THE EIGHT JUDICIAL DISTRICT, EL PASO, TEXAS

IN RE CHRIS MALOOLY, as Personal Representative of the Estate of
GERALDINE MALOOLY, Intervenors,
Relators

*Original Proceedings from*
*Statutory Probate Court Number Two of El Paso County, Texas*

**JAMES KIRBY READ, Successor Permanent Dependent Administrator with Will and
Codicil Annexed of the Estate of EDWARD ABRAHAM, DECEASED'S
APPENDIX
(A-1 THROUGH A-5)**

Respectfully submitted,

DARRON POWELL, Esq.
Attorney at Law
1517 Campbell
El Paso, Texas 79902
(915) 313-0081-Telephone
(915) 313-0091-Facsimile
State Bar No. 24027632

ATTORNEY FOR REAL PARTY
IN INTEREST JAMES KIRBY READ, AS
PERMANENT DEPENDENT
ADMINISTRATOR WITH WILL AND
CODICIL ANNEXED FOR THE ESTATE
OF EDWARD ABRAHAM, DECEASED

A-1 Defendant Second Amended Original Answer to Intervenor, Gilbert Malooly's Second Amended Petition in Intervention

A-2 Defendant's Second Amended Original Petition, and Plaintiffs' Supplemental Petition dated May 26th, 2015

A-3 Malooly Intervenors' 2017 Objection to James Kirby Read's Application for Distribution of $12,000,000.00

A-4 Defendant/Third-Party Plaintiff, James Kirby Read, Successor Permanent Dependent Administrator with Will and Codicil Annexed for the Estate of Edward Abraham, Deceased's Response to Malooly Intervenors' Objection to James Kirby Read's Application for a Distribution of $12,000,000.00 to the El Paso Community Foundation

A-5 Defendant/Third-Party Plaintiff, James Kirby Read, Successor Permanent Dependent Administrator with Will and Codicil Annexed for the Estate of Edward Abraham, Deceased's Response to Plaintiffs' Objections to James Kirby Read's Application for a Distribution of $12,000,000.00 to the El Paso Community Foundation

1

A-1

IN THE PROBATE COURT NO 2 OF

EL PASO COUNTY, TEXAS

TERI FINNEGAN, LEE CHAGRA, JR., and
JOANNA KRANCHER,

    Plaintiffs,

vs.

WESTSTAR BANK, AS INDEPENDENT
EXECUTOR OF THE ESTATE OF EDWARD
ABRAHAM, DECEASED,

    Defendant/Third-Party Plaintiff,

vs.

LESLIE C. KARAM, Individually,

    Third-Party Defendant.

and

GILBERT MALOOLY, on his behalf and on behalf
of Geraldine Malooly,

    Intervenors.

CAUSE NO. 2012-CPR03934-A

## DEFENDANT WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED'S SECOND AMENDED ORIGINAL ANSWER TO INTERVENOR, GILBERT MALOOLY, ON HIS BEHALF AND ON BEHALF OF GERALDINE MALOOLY'S SECOND AMENDED PETITION IN INTERVENTION

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE

OF EDWARD ABRAHAM, DECEASED, and files this their Second Amended Original Answer to

Intervenor, GILBERT MALOOLY on his behalf and on Behalf of GERALDINE MALOOLY's

Second Amended Petition in Intervention, and would respectfully show the Court the following:

# I.

## GENERAL DENIAL

WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED, Defendant, denies each and every, all and singular allegations contained in Intervenors' Second Amended Petition in Intervention and demands strict proof thereof.

# II.

## SPECIFIC DENIALS

For further Answer, if any is necessary, Defendant WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED specifically denies:

1) That the MALOOLY INTERVENORS' Claims for damages exceed $1,000,000.00

2) That under Section 37.004 Intervenors have the right to obtain a Declaration of Right to direct that WESTSTAR BANK abstain from bringing or prosecuting a claim for contribution or indemnification, against Intervenors.

3) That the Bequests for JOSEPH ABRAHAM, SR. to the CHAGRA GROUP were gifted in the form of one or several Trusts for their benefit as children of JOANNE CHAGRA.

4) That Decedent, EDWARD ABRAHAM, was Trustee of one or several Trusts.

5) That there is a dispute among the parties as to the "meaning of the Hondo Pass Partnership Agreement and the existence, duration and cessation of the Trust".

6) That the conduct of the Decedent, EDWARD ABRAHAM, as General Partner of the CJA Partnership is the basis of any claim of the CHAGRA GROUP.

7) That the 1990 Partnership Agreement dated November 15th, 1990 does not supercede the 1987 Partnership Agreement.

8) That Defendant, WESTSTAR BANK has sued the Malooly Intervenors for contribution or indemnification, to date.

9) That Intervenor, GILBERT MALOOLY, will face "ruinous financial uncertainty" as to his rights to the properties which are the subject of the Estate of EDWARD ABRAHAM, absent a Court Order directing WESTSTAR BANK to abstain from bring a claim of contribution.

10) That the Decedent, EDWARD ABRAHAM, made any false and misleading representations to the Malooly Intervenors.

11) That the Defendant, WESTSTAR BANK, made any false and misleading representations to the Malooly Intervenors.

12) That the Malooly Intervenors can maintain a cause of action for any purported false and misleading representations made by the Decedent, EDWARD ABRAHAM, to them.

13) That the Malooly Intervenors can maintain a cause of action for any purported false and misleading representations made by Defendant, WESTSTAR BANK, to them.

14) That the Malooly Intervenors have made full payment to WESTSTAR BANK out of the commercial revenues of the McCombs property.

15) That GILBERT MALOOLY, SR. made payments to EDDIE ABRAHAM from the McRae Center Commercial Lease Revenues from "1998 through 2014 of $583,700.00."

16) That the Decedent, EDWARD ABRAHAM, was responsible for GILBERT MALOOLY's purported errors in payments for the McCombs and McRae Commercial Properties.

17) That the Decedent, EDWARD ABRAHAM, committed any continuing fraud on the Malooly Intervenors, in connection with the McCombs and McRae Commercial Properties.

18) That the Defendant, WESTSTAR BANK, committed any continuing fraud on the Malooly Intervenors, in connection with the McCombs and McRae Commercial Properties.

19) That the Decedent, EDWARD ABRAHAM, violated his oath to the Probate Court where his father's Estate was filed.

20) That the Decedent, EDWARD ABRAHAM, engaged in any self-dealing as to the McCombs and McRae Commercial Properties.

21) That the Decedent, EDWARD ABRAHAM, made hundreds of fraudulent representations, in the course of a 16-year scheme.

22) That any purported failure of Defendant, WESTSTAR BANK, to file an Amended Inventory in this Estate, constitutes a fraudulent representation.

23) That any purported failure of Defendant, WESTSTAR BANK, to file an Amended Inventory in this Estate, constitutes a Breach of Fiduciary Duty.

24) That any purported failure of Defendant, WESTSTAR BANK, to file an Amended Inventory in this Estate, constitutes self-dealing, to the detriment of the Malooly Intervenors.

25) That any purported failure of Defendant, WESTSTAR BANK, to file an Amended Inventory in this Estate, constitutes misrepresentation.

26) That any purported failure of Defendant, WESTSTAR BANK, to file an Amended Inventory in this Estate, constitutes fraudulent concealment.

27) That any purported failure of WESTSTAR BANK, to file an Amended Inventory in this Estate, has resulted in any harm to the Malooly Intervenors.

28) That the Discovery Rule is available to the Malooly Intervenors, in this case.

29) That the Doctrine of Fraudulent Concealment is available to the Malooly Intervenors, in this case.

30) That the Continuing Tort Doctrine is available to the Malooly Intervenors, in this case.

31) That the Decedent EDWARD ABRAHAM made false, material representations to the Malooly Intervenors, about the McRae and McCombs Properties.

32) That WESTSTAR BANK made false, material representations to the Malooly Intervenors, about the McRae and McCombs Properties.

33) That the Decedent, EDWARD ABRAHAM, knew representations made to the Malooly Intervenors, about the McRae and McCombs Properties, were false.

34) That WESTSTAR BANK, knew representations made to the Malooly Intervenors, about the McRae and McCombs Properties, were false.

35) That the Decedent, EDWARD ABRAHAM, made representations to the Malooly Intervenors, about the McRae and McCombs Properties, that were made recklessly without knowledge of the truth.

36) That WESTSTAR BANK, made representations to the Malooly Intervenors, about the McRae and McCombs Properties, that were made recklessly without knowledge of the truth.

37) That the Decedent, EDWARD ABRAHAM, made representations to the Malooly Intervenors, about the McRae and McCombs Properties, with the intent that the Malooly Intervenors would rely on them, to their detriment.

38) That WESTSTAR BANK, made representations to the Malooly Intervenors, about the McRae and McCombs Properties, with the intent that the Malooly Intervenors would rely on them, to their detriment.

39) That the Decedent, EDWARD ABRAHAM's purported fraudulent conduct, proximately caused damages to the Malooly Intervenors.

40) That WESTSTAR BANK's purported fraudulent conduct, proximately caused damages to the Malooly Intervenors.

41) That a cause of action for Fraud can be maintained by the Malooly Intervenors in this case for conduct before April 10th, 2011 (more than 4 years before the date of filing of Intervenors' Second Amended Petition in Intervention on April 10th, 2015).

42) That the Malooly Intervenors' cause of action for Fraud contained in the Second Amended Petition in Intervention, relates back to the filing of their initial Petition in Intervention.

43) That the Malooly Intervenors cause of action for Fraud, contained in the Second Amended Petition in Intervention, relates back to the filing of their First Amended Petition in Intervention.

44) That the Malooly Intervenors cause of action for Fraud, contained in the Second Amended Petition in Intervention, is part of the same transaction or occurrence, pled in their initial Petition in Intervention.

45) That the Malooly Intervenors cause of action for Fraud, contained in the Second Amended Petition in Intervention, is part of the same transaction or occurrence, pled in their First Amended Petition in Intervention.

46) That the Decedent, EDWARD ABRAHAM Breached any Fiduciary Duty, owed to the Malooly Intervenors.

47) That WESTSTAR BANK Breached any Fiduciary Duty, owed to the Malooly Intervenors.

48) That any purported Breach of Duty from "1998" to date, is actionable in this case.

49) That that Malooly Intervenors were damaged by any purported Breach of Duty, by the Decedent, EDWARD ABRAHAM.

50) That the Malooly Intervenors were damaged by any purported Breach of Duty by WESTSTAR BANK.

51) That a Cause of Action for Breach of Fiduciary Duty can be maintained by the Maloolys in this case, for conduct before April 10th, 2011 (more than 4 years before the date of filing of the Malooly Second Amended Petition in Intervention on April 10th, 2015).

52) That the Malooly Intervenors' Cause of Action for Breach of Fiduciary Duty, contained in their Second Amended Petition in Intervention, relates back to the filing date of their initial Petition in Intervention.

53) That the Malooly Intervenors' Cause of Action for Breach of Fiduciary Duty, contained in their Second Amended Petition in Intervention, relates back to the filing date of their First Amended Petition in Intervention.

54) That the Malooly Intervenors' Cause of Action for Breach of Fiduciary Duty, contained in their Second Amended Petition in Intervention, is part of the same transaction or occurrence pled in their initial Petition in Intervention.

55) That the Malooly Intervenors' Cause of Action for Breach of Fiduciary Duty contained in their Second Amended Petition in Intervention, is part of the same transaction or occurrence pled in their First Amended Petition in Intervention.

56) That the Decedent, EDWARD ABRAHAM, wrongfully converted any funds, belonging to the Malooly Intervenors.

57) That Defendant, WESTSTAR BANK, wrongfully converted any funds belonging to the Malooly Intervenors.

58) That the Malooly Intervenors have been damaged by any purported Conversion, by the Decedent, EDWARD ABRAHAM.

59) That the Malooly Intervenors have been damaged by any purported Conversion, by WESTSTAR BANK.

60) That a Cause of Action for Conversion, can be maintained by the Maloolys in this cause for conduct before April 10th, 2013 (more than 2 years before the date of filing of the Malooly Intervenors' Second Amended Petition in Intervention on April 10th, 2015).

61) That the Malooly Intervenors' Cause of Action for Conversion, contained in their Second Amended Petition in Intervention, relates back to the filing date of their initial Petition in Intervention.

62) That the Malooly Intervenors' Cause of Action for Conversion, contained in their Second Amended Petition in Intervention, relates back to the filing date of their First Amended Petition in Intervention.

63) That the Malooly Intervenors' Cause of Action for Conversion, contained in their Second Amended Petition in Intervention, is part of the same transaction or occurrence pled in their initial Petition in Intervention.

64) That the Malooly Intervenors' Cause of Action for Conversion, contained in their Second Amended Petition in Intervention, is part of the same transaction or occurrence pled in their First Amended Petition in Intervention.

65) That the Decedent, EDWARD ABRAHAM, Breached any Contract with the Malooly Intervenors.

66) That WESTSTAR BANK, Breached any Contract with the Malooly Intervenors.

67) That the Malooly Intervenors sustained any actual or consequential damages as a result of a purported Breach of Contract, by the Decedent, EDWARD ABRAHAM.

68) That the Malooly Intervenors sustained any actual or consequential damages as a result of a purported Breach of Contract by the, Defendant, WESTSTAR BANK.

69) That a Cause of Action for Breach of Contract can be maintained by the Malooly Intervenors in this case for conduct before April 10th, 2011 (more than 4 years before the date of filing of the Malooly Intervenors' Second Amended Petition in Intervention on April 10th, 2015).

70) That the Malooly Intervenors' Cause of Action for Breach of Contract, contained in their Second Amended Petition in Intervention, relates back to the filing date of their initial Petition in Intervention.

71) That the Malooly Intervenors' Cause of Action for Breach of Contract, contained in their Second Amended Petition in Intervention, relates back to the filing date of their First Amended Petition in Intervention.

72) That the Malooly Intervenors' Cause of Action for Breach of Contract, contained in their Second Amended Petition in Intervention, is part of the same transaction or occurrence pled in their initial Petition in Intervention.

73) That the Malooly Intervenors' Cause of Action for Breach of Contract, contained in their Second Amended Petition in Intervention, is part of the same transaction or occurrence pled in their First Amended Petition in Intervention.

74) That the Decedent, EDWARD ABRAHAM, received and held money, that was actually the property of the Malooly Intervenors.

75) That WESTSTAR BANK, received and held money, that was actually the property of the Malooly Intervenors.

76) That the conduct of the Decedent, EDWARD ABRAHAM, as to "Money Had and Received", caused damage to the Malooly Intervenors.

77) That the conduct of Defendant, WESTSTAR BANK, as to "Money Had and Received", caused damage to the Malooly Intervenors.

78) That the Malooly Intervenors' Cause of Action for Money Had and Received ("Count Five') contained in their Second Amended Petition in Intervention, can be maintained in this cause, for conduct that occurred before April 10th, 2011 (more than 4 years before the filing date of the Malooly Intervenors' Second Amended Petition in Intervention on April 10th, 2015).

79) That the Malooly Intervenors' Cause of Action for Money Had and Received, relates back to the filing date of their initial Petition in Intervention.

80) That the Malooly Intervenors' Cause of Action for Money Had and Received, relates back to the filing date of their First Amended Petition in Intervention.

81) That the Malooly Intervenors' Cause of Action for Money Had and Received, is part of the same transaction and occurrence pled in their initial Petition in Intervention.

82) That the Malooly Intervenors' Cause of Action for Money Had and Received, is part of the same transaction and occurrence pled in their First Amended Petition in Intervention.

83) That the Malooly Intervenors are entitled to a prospective Declaration of Rights on any matters for which they have not yet been sued.

84) That the Malooly Intervenors are entitled to a Court Order ordering WESTSTAR BANK to abstain from bringing a Contribution Claim, against the Malooly Intervenors.

85) That the Malooly Intervenors are entitled to a Court Order ordering WESTSTAR BANK to abstain from bringing an Indemnification Claim, against the Malooly Intervenors.

86) That the Malooly Intervenors are entitled to an Accounting of the Hondo Property Management of the Decedent, EDWARD ABRAHAM, particularly since they bought the Estate's Interest in that property from Defendant, WESTSTAR BANK.

87) That the Decedent, EDWARD ABRAHAM misapplied funds of the Hondo Property Management in concert with Joseph "Sib" Abraham, under the description of "Loans".

88) That the Malooly Intervenors have not been paid all funds to which they were entitled, under the Hondo Property Management.

89) That the Malooly Intervenors do not have knowledge of the repayment of loans by Joseph "Sib" Abraham in connection with the Hondo Property Management.

90) That the Malooly Intervenors were not aware of the repayment of loans by Joseph "Sib" Abraham in connection with the Hondo Property Management.

91) That the Malooly Intervenors are entitled to a Declaration of Rights as to the CHAGRA GROUP concerning Fiduciary Duties, for which they have not yet been sued.

92) That the Malooly Intervenors are entitled to any actual damages in this cause.

93) That the Decedent, EDWARD ABRAHAM, is responsible for errors in payments, which the Malooly Intervenors made, with respect to the McCombs/McRae Properties.

94) That the Defendant, WESTSTAR BANK, is responsible for errors in payments, which the Malooly Intervenors made, with respect to the McCombs/McRae Properties.

95) That the Malooly Intervenors are entitled to any damages for Loans which the Decedent, EDWARD ABRAHAM made to Joseph "Sib" Abraham, regarding the Hondo Pass Property.

96) That the Decedent, EDWARD ABRAHAM, failed to reimburse Intervenor, Gilbert Malooly.

97) That any management fees should be forfeited.

98) That any Executor's Fees should be forfeited.

99) That any Estate expenses that have been reimbursed, should be forfeited.

100) That the Malooly Intervenors are entitled to recovery of any Consequential Damages in this case.

101) That the Malooly Intervenors are entitled to recovery of any Lost Profits.

102) That the Malooly Intervenors are entitled to damages in excess of $600,000.00 but no more than $8,000,000.00.

103) That the Malooly Intervenors are entitled to an award of any Attorneys' Fees.

104) That the Malooly Intervenors are entitled to recovery of Attorneys' Fees under Chapter 38 of the Texas Civil Practice and Remedies Code.

105) That the Malooly Intervenors have complied with the procedure of Chapter 38 of the Texas Civil Practice and Remedies Code, for the recovery of Attorneys' Fees.

106) That the Malooly Intervenors are entitled to Attorneys' Fees under Chapter 134 of the Texas Civil Practice and Remedies Code.

107) That the Malooly Intervenors have complied with the procedures under Chapter 134 of the Civil Practice and Remedies Code, for the recovery Attorneys' Fees.

108) That the Malooly Intervenors are entitled to Attorneys' Fees under "other relevant Texas Statutes" that have not been named.

109) That the Malooly Intervenors are entitled to recovery of their costs.

110) That the Malooly Intervenors are entitled to recovery of Prejudgment Interest.

111) That the Malooly Intervenors are entitled to recovery of Post-Judgment Interest.

112) That the conduct of the Decedent, EDWARD ABRAHAM, was of such character as to constitute fraud, malice, or gross negligence.

113) That the conduct of Defendant, WESTSTAR BANK, was of such character as to constitute fraud, malice, or gross negligence.

114) That the Malooly Intervenors are entitled to any award of any exemplary damages.

115) That the Malooly Intervenors are entitled to the imposition of a Constructive Trust, on the assets of this Estate.

116) That $2,000,000.00 to $4,000,000.00 would not have been passed to the Decedent, EDWARD ABRAHAM, in the absence of the Decedent's purported wrongful conduct.

117) That the First Time that the Malooly Intervenors had notice of any Title problems with the McCombs/McRae Properties was in November of 2014.

118) That the Malooly Intervenors had no Constructive Notice of any Title Problems with McCombs/McRae Properties between 1998 and November of 2014.

119) That the MALOOLY INTERVENORS had no duty to investigate any Title Problems as to the McCombs/McRae Properties between 1998 and November of 2014.

120) That the MALOOLY INTERVENORS were not aware of any Title problems as to the McCombs/McRae properties until November of 2014.

III.

SPECIAL EXCEPTION

First Special Exception: Defendant WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED, specially excepts to the MALOOLY INTERVENORS' Request for Injunctive Relief i.e. for the Bank to abstain from

certain conduct, because such a request for Injunctive Relief fails to comply with the Texas Rules of Civil Procedure in that the pleading is not verified or supported by Affidavit; does not provide for an Injunctive Cost Bond; nor does it demonstrate irreparable injury, loss or damage. Remarkably, the purported, irreparable injury, loss or damage is GILBERT MALOOLY, SR.'s "ruinous financial uncertainty."

Accordingly, Defendant WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED moves the Court to require the MALOOLY INTERVENORS to replead this allegation in the Second Amended Petition in Intervention, or in the alternative, to strike the MALOOLY INTERVENORS' Request for Injunctive Relief in the Second Amended Petition in Intervention.

## IV.

### AFFIRMATIVE DEFENSES:

#### FIRST AFFIRMATIVE DEFENSE:
#### THE MALOOLY INTERVENORS' REQUEST FOR DECLARATORY RELIEF IS A REQUEST FOR THE COURT TO RENDER AN ADVISORY OPINION, AND DECLARE NON-LIABILITY FOR PAST CONDUCT

The Texas Supreme Court has held that a Declaratory Judgment requires a **justiciable** controversy as to the rights and status of parties actually before the Court for adjudication, and the declaration sought must actually resolve the controversy, *Brooks v. Northglen Assn.*, 141 S.W.3d 158, 164 (Tex. 2004, reh.denied). The Declaratory Judgment Act does not empower the Court to render an advisory opinion or to rule on a hypothetical fact situation, as the MALOOLY INTERVENORS have requested. Accordingly, a judicial decision reached without a case or controversy, is an advisory opinion, which is barred by the separation of powers provisions of the Texas Constitution. *Brooks, supra* at 164.

Moreover, a request for Declaratory Judgment depends on a finding that the issues are not hypothetical or contingent, and the question presented must resolve an actual controversy, although such questions may in the future require adjudication, *Empire Life Insurance Co. v. Moody,* 584 S.W.2d 855, 858 (Tex. 1989). In this case, MALOOLY INTERVENORS are not Heirs or Devisees of the EDWARD ABRAHAM's Estate, and are not adjudicated liable or at fault, even if designated a Responsible Third-Party. Perhaps the best illustration that the MALOOLY INTERVENORS seek an advisory opinion is their request for Declaratory Relief to the Court for a Declaration of Right that MALOOLY INTERVENORS did not owe a fiduciary duty to the Chagra Plaintiffs. Clearly, this is a request to the Court for Declaration of Non-Liability, and not an appropriate request for Declaratory Relief. Moreover, a further illustration that MALOOLY INTERVENORS' liability is hypothetical is the fact that Section 33.004(i) of the Texas Civil Practice and Remedies Code expressly provides that even the granting of a Motion for Leave to Designate a person as a Responsible Third-Party, or a finding of fault against the person does not, by itself, impose liability on the person. In this case, the Independent Executor merely named GILBERT MALOOLY as a possible Responsible Third-Party and has not sought Court approval for such a Designation, and has not actually sued the MALOOLY INTERVENORS for such Contribution and Indemnification.

Finally, the MALOOLY INTERVENORS' request for a Court Order for WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED, to abstain from bringing a claim for either contribution or indemnification is, in reality, a request for Injunctive Relief to enjoin the Bank, under the disguise of a request for Declaratory Relief. Such a Request for Injunctive Relief is clearly improper and fails to comply with the Texas Rules of Civil Procedure, because their pleading is not verified or supported by Affidavit;

does not provide for an Injunction Cost Bond; and does not demonstrate irreparable injury, loss or damage. The "ruinous financial uncertainty" claimed by Gilbert Malooly, Sr. simply does not suffice.

Therefore, since the Declaratory Judgment would not terminate a controversy between parties and would be irrelevant at the time Judgment is entered, this request for Declaratory Relief amounts to no more than an advisory opinion which the Court lacks the power to deliver. It is undisputed that the Declaratory Judgment Act does not empower this Court to issue advisory opinions. *Brooks, supra.* at 164. Consequently, this Court should not declare the Non-Liability of the MALOOLY INTERVENORS or issue an Order for WESTSTAR BANK to abstain from bringing claims.

## V.

### SECOND AFFIRMATIVE DEFENSE: THE MALOOLY INTERVENORS CAUSES OF ACTION DO NOT RELATE BACK TO THEIR INITIAL FILING, UNDER SECTION 16.068 OF THE CIVIL PRACTICE AND REMEDIES CODE

The MALOOLY INTERVENORS' Second Amended Petition in Intervention contains Five (5) new Causes of Action not found in either of their initial Petition in Intervention or their First Amended Petition in Intervention, namely: Fraud (Count One); Breach of Fiduciary Duty (Count Two); Conversion (Count Three); Breach of Contract (Count Four); and Money Had and Received (Count Five). Aside from the unqualified, Sworn Testimony of Gilbert Malooly, Sr. at his Deposition of May 13th, 2014 that he had no evidence of any wrongful conduct by the Decedent, EDWARD ABRAHAM, these new Causes of Action clearly do not relate back to the MALOOLY INTERVENORS' initial Petition in Intervention or their First Amended Petition in Intervention.

Section 16.068 of the Texas Rules of Civil Practice and Remedies Code expressly provides:

> If a filed pleading relates to a cause of action, cross-action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation unless the amendment or supplement is wholly based on a new distinct, or different transaction or occurrence.

Page 16

The five (5) new Cause of action contained in Intervenors' Second Amended Petition filed April 10th, 2015 are based on new, distinct and different, transactions or occurrences, than what is contained in either their initial Petition in Intervention or their First Amended Petition in Intervention. Consequently, these five (5) new Causes of Action (Fraud, Breach of Fiduciary Duty, Conversion, Breach of Contract and Money Had and Received) are subject to a Plea of Limitation, and the operative date for calculating Limitations is April 10th, 2015, when they were first raised by the MALOOLY INTERVENORS, is a new, different and distinct, transaction or occurrence.

## VI.

### THIRD AFFIRMATIVE DEFENSE:

For further Answer if any is necessary, Defendant alleges by Third Affirmative Defense that there is no longer a Cause of Action for the Breach of Fiduciary Duty in Partnership Dealings in the State of Texas, and the rights, obligations and duties of partners have been codified in the Texas Business Organizations Code since January 1, 2010, regardless of when the partnership was formed. More specifically, WESTSTAR BANK contends that the Decedent, EDWARD ABRAHAM conducted himself in a manner that he reasonably believed was in the best interest of the partnership, and acted in good faith. Moreover, it is disingenuous for the MALOOLY INTERVENORS to allege a Breach of Fiduciary Duty against the Decedent, EDWARD ABRAHAM in Partnership Dealings, when they had the Partnership Duty of Care and were responsible for making the Partnership distributions for the McCombs/McRae Properties, together with the preparation of IRS Forms K-1 for such properties, and WESTSTAR BANK relied on their IRS Forms K-1. Finally, the MALOOLY INTERVENORS are attempting to substitute their Business Judgment for that of the Decedent, after never previously complaining to the Decedent, EDWARD ABRAHAM, about the Title to the McCombs/McRae Properties.

## FOURTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by Fourth Affirmative Defense that Section 152.204 of the Texas Business Organizations Code has governed all Partnership Dealings in the State of Texas since January 1st, 2010, regardless of when the partnership was formed. More specifically, Defendant WESTSTAR BANK contends that under Section 152.204(d) that the Decedent, in his capacity as Managing Partner, was not a Trustee and is not held to the standards of a Trustee. Moreover, under Section 152.204(c), Defendant contends that the Decedent did not violate a duty or obligation under the Texas Business Organizations Code or under the Partnership Agreement, merely because his conduct may have furthered his own interests.

VIII.

## FIFTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by Fifth Affirmative Defense that Section 152.206 of the Texas Business Organizations Code has governed all Partnership Dealings in the State of Texas since January 1, 2010, regardless of when the partnership was formed. More specifically, Defendant, WESTSTAR BANK contends that under Section 152.206(b), that an error in Judgment by the Decedent, while acting as a Managing Partner, does not by itself constitute a Breach of the Duty of Care, owed to the MALOOLY INTERVENORS (or the CHAGRA Plaintiffs, for that matter).

IX.

## SIXTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by Sixth Affirmative Defense that the MALOOLY INTERVENORS are Estopped from making many of the claims that form the basis

of their Second Amended Petition in Intervention. More specifically, MALOOLY INTERVENORS are estopped from requesting an Accounting for Loans made by the Decedent, EDWARD ABRAHAM to Joseph "Sib" Abraham, because the MALOOLY INTERVENORS not only had knowledge of such loans, but facilitated the repayment of such Loans and were an integral part of that transaction. Likewise, the MALOOLY INTERVENORS are estopped from claiming the Decedent, EDWARD ABRAHAM misled them as to the ownership of the McCombs/McRae Properties, because the MALOOLY INTERVENORS were the Managing Partners of such properties, and as such, had the Partnership duty to make sure they were making appropriate Partnership Distributions. Moreover, the MALOOLY INTERVENORS are estopped from complaining about Title to the McCombs/McRae Properties, because they did not conduct a Title Search between 1998 to November of 2014, by their own judicial admission. Consequently, the MALOOLY INTERVENORS cannot now shift the blame for their mistakes, to a Decedent, who cannot now defend himself.

X.

## SEVENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of **Seventh Affirmative Defense** that MALOOLY INTERVENORS have Waived the right to recover over-payments for the McCombs/McRae Properties that they allege were paid to the Decedent, EDWARD ABRAHAM. The MALOOLY INTERVENORS were the Managing Partners of the McCombs/McRae Property and cannot now shift the blame for their errors in making partnership distributions "from 1998 to date" to the Decedent, EDWARD ABRAHAM, who cannot now defend himself. Finally, the MALOOLY INTERVENORS have waived any claims for Title problems with the McCombs/McRae Properties, because they had constructive notice by means of Public Records of El Paso County, as

to the ownership of such properties, and even though they were the Managing Partner, never conducted a Title Search from 1998 to November of 2014, by their own judicial admission.

## XI.

## EIGHTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Eighth Affirmative Defense the Doctrines of Ratification and/or Acquiescence. More specifically, the MALOOLY INTERVENORS have either ratified or acquiesced in their claim of over-payment of partnership distributions made to the Decedent, EDWARD ABRAHAM for the McCombs/McRae Commercial properties since "1998" and cannot now shift the blame for their errors as Managing Partner to the Decedent, who cannot now defend himself. Moreover, the MALOOLY INTERVENORS acquiesced by failing to obtain a Title Report on the McCombs/McRae Properties until November of 2014. Consequently, the MALOOLY INTERVENORS either ratified or acquiesced to those purported over-payments to the Decedent Edward Abraham.

## XII.

## NINTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Ninth Affirmative Defense, the Doctrine of Laches. More specifically, for years, the MALOOLY INTERVENORS were the Managing Partnerships of the McCombs/McRae Properties and, as such, were responsible for the appropriate payments of Partnership distributions. Consequently, the Doctrine of Laches bars the MALOOLY INTERVENORS from now changing their positions so as to allow them to shift the blame for their errors as Managing Partner, to the Decedent, EDWARD ABRAHAM, who cannot now defend himself.

## TENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by Tenth Affirmative Defense that the MALOOLY INTERVENORS' suit is barred by Limitations. More specifically, the MALOOLY INTERVENORS allege wrongful conduct of the Decedent, EDWARD ABRAHAM from "1998 to date". The MALOOLY INTERVENORS' cause of action for Conversion is barred by the two (2) year Statute of Limitations contained in Section 16.003(a) of the Texas Civil Practice and Remedies Code. Similarly, MALOOLY INTERVENORS' causes of action for Fraud, Breach of Contract, Breach of Fiduciary Duty, and Money Had and Received are barred by the four (4) year Statute of Limitations contained in Sections 16.004(a) and 16.051 of the Texas Civil Practice and Remedies Code. Moreover, none of the Five (5) new Causes of Action contained in the MALOOLY INTERVENORS' Second Amended Petition in Intervention relate back to the date of filing of their initial Petition in Intervention, under Section 16.068 of the Texas Civil Practice and Remedies Code.

While the MALOOLY INTERVENORS now claim, that they just discovered the Title Problem in November of 2014, they had a duty as Managing Partner to conduct such a Title Search as far back of 1998. They were also on constructive notice of Title to the McCombs/McRae Properties be means of the Public Records of El Paso County, Texas. Clearly, their claims are barred by Limitations.

## XIV.

## ELEVENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by Eleventh Affirmative Defense that any Oral Agreement alleged in MALOOLY INTERVENORS' Second Amended Original Petition in Intervention is unenforceable, because of the Statute of Frauds. More specifically, the

MALOOLY INTERVENORS allege oral Agreements with respect to Real Property with the Decedent, EDWARD ABRAHAM, and which were not performable within a year. Such Oral Agreements, with the Decedent, even if they were actually made, are unenforceable, pursuant to Section 26.01 et. seq. of the Texas Business and Commerce Code and the Statute of Frauds.

## XV.

### TWELFTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Twelfth Affirmative Defense that the Dead Man's Rule contained in Rule 601 of the Texas Rules of Evidence renders the MALOOLY INTERVENORS' allegations about the Decedent's representations inadmissible into evidence in a civil action. More specifically, the MALOOLY INTERVENORS' Second Amended Original Petition in Intervention is based on numerous, uncorroborated oral statements ("hundreds of representations") allegedly made by the Decedent, that are not admissible into Evidence in this Probate Cause, and which should be excluded under Rule 601(b).

## XVI.

### THIRTEENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Thirteenth Affirmative Defense with regard to Decedent's conduct complained about by the MALOOLY INTERVENORS, the Decedent acted in good faith, and was not guilty of bad faith, self-dealing, or reckless indifference towards the MALOOLY INTERVENORS' interests or rights. Moreover, the Decedent, EDWARD ABRAHAM exercised the judgment and care that, under the then-prevailing circumstances, a person of ordinary prudence, discretion and intelligence would exercise in the management of their own affairs i.e. the prudent person standard.

## XVII.

### FOURTEENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Fourteenth Affirmative Defense that the MALOOLY INTERVENORS' claims are barred, in whole or in part, due to the MALOOLY INTERVENORS' own negligence, in that MALOOLY INTERVENORS failed to exercise ordinary care, or exercise reasonable diligence, which proximately caused in whole or in part the injuries and damages, if any, complained of by the MALOOLY INTERVENORS. More specifically, the MALOOLY INTERVENORS claim that a Title Search in November of 2014 disclosed a Title problems with the McCombs/McRae Properties. Since as Managing Partner, the MALOOLY INTERVENORS should have conducted such a Title Search as far back as 1998, they should not now be allowed to shift blame for their error, to the Decedent, EDWARD ABRAHAM, who cannot now defend himself. The MALOOLY INTERVENORS were also on constructive notice of Title to the McCombs/McRae Properties by means of the Public Records of El Paso County, Texas.

## XVIII.

### FIFTEENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Fifteenth Affirmative Defense of Doctrine of Proportionate Responsibility. More specifically, the MALOOLY INTERVENORS' injuries and damages, if any, can be attributed to several causes and should be apporportioned among the various causes according to the respective contributions of such causes to the harm sustained, if any.

## XIX.

### SIXTEENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Sixteenth Affirmative Defense the purported failure to amend an Estate Inventory in an on-going Probate Cause, does not constitute the basis for a Cause of Action for Fraud, Breach of Fiduciary Duty or Misrepresentation. Rather, the correct procedure is to file suit to Correct an Erroneous or Unjust Inventory under Section 309.103 of the Texas Estates Code.

Moreover, the MALOOLY INTERVENORS are improperly using the Estate's Inventory as conclusive evidence in their Second Amended Petition in Intervention, contrary to Section 309.151 of the Texas Estates Code.

## XX.

### SEVENTEENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Seventeenth Affirmative Defense of Doctrine of Unclean Hands. The MALOOLY INTERVENORS attempt to improperly use the Estate's Inventory as evidence, is in violation of Section 309.151 of the Texas Estates Code, and constitutes "Uncleans Hands". Moreover, they attempt to shift the responsibility of a Title search for the McCombs/McRae Commercial Properties, when they were the Managing Partners, with that responsibility and that Partnership Duty of Care.

## XXI.

### EIGHTEENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Eighteenth Affirmative Defense, that the "Discovery Rule" does not apply in this lawsuit.

Courts will not apply the Discovery Rule to claims arising from probate proceedings, even if the Claim is for Fraud. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981); *Neill v. Yett*, 746 S.W.2d 32, 35-26 (Tex. App.-Austin 1988, writ denied). Consequently, the MALOOLY INTERVENORS claims of more than 17 years of damages are conclusively barred by Limitations, particularly since the "Discovery Rule" cannot be applied in this Cause. Moreover, the MALOOLY INTERVENORS failure to exercise reasonable diligence also precludes application of the "Discovery Rule" in this Cause. By their judicial admissions in their own pleadings, the MALOOLY INTERVENORS state that they did not request a Title Search of the McCombs/McRae Properties from 1998 until November, 2014 and there is no evidence that the MALOOLY INTERVENORS ever complained to the Decedent, EDWARD ABRAHAM about the Title to the McCombs/McRae Properties. Consequently, the MALOOLY INTERVENORS' failure to exercise reasonable diligence precludes application of the Discovery Rule in this Case, whatsoever.

## XXII.

### NINETEENTH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Nineteenth Affirmative Defense, that the Continuing Tort Doctrine, does not apply in this lawsuit.

The Texas Supreme Court has not recognized the "Continuing Tort Doctrine" and it does not apply to the MALOOLY INTERVENORS' Tort Causes of Action in this lawsuit. More specifically, lower Courts have held that the "Continuing Tort Doctrine" traditionally applies to causes of action such as Nuisance, Trespass and False Imprisonment, and not the Tort causes of action alleged by the MALOOLY INTERVENORS in this lawsuit. *50 Tex Jur. 3d-Limitations, Section 66 entitled "Continuing Tort", at page 378.*

## XXIII.

### TWENTIETH AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Twentieth Affirmative Defense the statutory cap for exemplary damages. More specifically, Defendant invokes the limitations on the amount of exemplary damages recoverable that is contained in Section 41.008 of the Texas Civil Practice and Remedies Code.

## XXIV.

### TWENTY-FIRST AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Twenty-First Affirmative Defense the standards for the recovery for exemplary damages. More specifically, Defendant alleges the standards for recovery of exemplary damages as contained in Section 41.003 of the Texas Civil Practice and Remedies Code, in that the MALOOLY INTERVENORS must prove by clear and convincing evidence that the harm with respect to which the MALOOLY INTERVENORS seek recovery of exemplary damages, is based on fraud, malice or gross negligence; and that exemplary damages not be awarded unless the Jury Verdict is unanimous.

## XXV.

### TWENTY-SECOND AFFIRMATIVE DEFENSE:

For further Answer, if any is necessary, Defendant alleges by way of Twenty-Second Affirmative Defense that MALOOLY INTERVENORS have failed to comply with any Statutory basis for recovery of any Attorney's Fees, whatsoever.

## XXVI.

### JURY DEMAND

Defendant, WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED requests a Trial by Jury.

## XXVII.

### PRAYER

WHEREFORE, WESTSTAR BANK requests judgment of the Court that MALOOLY INTERVENORS take nothing by their suit, and that WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED recover all costs incurred in defense of the MALOOLY INTERVENORS' Declaratory Judgment Action and Claims, as well as:

1) Costs of suit; and

2) Such other and further relief to which WESTSTAR BANK, AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED may be justly entitled, in law or in equity.

Respectfully submitted,

DARRON POWELL, Esq.
Attorney for Defendants
1517 Campbell
El Paso, Texas 79902
(915) 313-0081-Telephone
(915) 313-0091-Facsimile
State Bar No. 24027632

## CERTIFICATE OF SERVICE

I, DARRON POWELL, do hereby certify that I have delivered a true and correct copy of the foregoing to Intervenor GILBERT MALOOLY, by and through their Attorneys of Record, Mark C. Walker, Esq., COX SMITH MATTHEWS INCORPORATED, 221 North Kansas Street, Suite 2000, El Paso, Texas 79901 and to Thomas E. Stanton, Esq., 409 Oakcrest, Cedar Park, Texas 78613, and to Plaintiffs/Third-Party Defendants, TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER, by and through their Attorneys of Record, Sam J. Legate, Esq., SCHERR & LEGATE, PLLC., Attorneys at Law, 109 North Oregon, 12th, Floor, El Paso, Texas 79901Jerome M. Karam, Esq., Law Office of Jerome Karam, 308 W. Parkwood, Suite 104A, Friendswood, Texas 77546, on this the ___20___ day of ___April___, 2015.

_____
DARRON POWELL

A-2

Filed 6/8/2015 4:53:39 PM
Delia Briones
County Clerk
El Paso County
2012-CPR0393∠

IN THE PROBATE COURT NO 2 OF

EL PASO COUNTY, TEXAS

| | |
|---|---|
| TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER,<br><br>    Plaintiffs/Counter-Claim Defendants,<br><br>vs.<br><br>WESTSTAR BANK HOLDING COMPANY, INC., AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED,<br><br>    Defendant/Third-Party Plaintiff/Counter-Claim Plaintiff,<br><br>vs.<br><br>LESLIE C. KARAM, Individually,<br><br>    Third-Party Defendant.<br><br>and<br><br>GILBERT MALOOLY, on his behalf and on behalf of Geraldine Malooly,<br><br>    Intervenors/Counter-Claim Defendants. | CAUSE NO. 2012-CPR03934 |

### DEFENDANT'S SECOND AMENDED ORIGINAL ANSWER TO PLAINTIFFS' SECOND AMENDED ORIGINAL PETITION, AND PLAINTIFFS' SUPPLEMENTAL PETITION DATED MAY 26TH, 2015, TOGETHER WITH DEFENDANT'S THIRD AMENDED ORIGINAL COUNTER-CLAIM

TO THE HONORABLE JUDGE OF SAID COURT:

Comes now, WESTSTAR BANK HOLDING COMPANY, INC., AS INDEPENDENT

EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED, and files this their

Second Amended Original Answer to Plaintiffs' Second Amended Original Petition, and Plaintiffs'

Supplemental Petition dated May 26th, 2015, filed in this Cause, together with Defendant's Third

Amended Original Counter-Claim, and would respectfully show the Court the following:

Page 1

## I.

### GENERAL DENIAL

WESTSTAR BANK HOLDING COMPANY, INC., AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED, Defendant, denies each and every, all and singular allegations contained in Plaintiff's Second Amended Original Petition, and Plaintiffs' Supplemental Petition dated May 26th, 2015, and demands strict proof thereof.

## II.

### SPECIFIC DENIALS

For further Answer, if any is necessary, Defendant WESTSTAR BANK HOLDING COMPANY, INC., AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED **specifically denies**:

1. that the Decedent failed to protect Plaintiffs' interests in the Property at issue in this Cause;

2. that the Decedent breached any Fiduciary Duties owed to Plaintiffs in connection with managing the properties at issue in this Cause;

3. that the Decedent failed and refused to account to the Plaintiffs, with respect to their interests, collectively and individually;

4. that the Decedent failed and refused to account to Plaintiffs, with respect to the businesses and assets held by the Family Partnerships;

5. that the Decedent failed and refused to provide Plaintiffs with access to the books and records of the Family Partnerships;

6. that the Decedent failed and refused to provide Plaintiffs with access to the books and records of the Property at issue in this Cause;

7. that the Decedent failed to file required reports and other filings with the Texas Secretary of State, on behalf of the Family Partnerships and/or the Property;

8. that the Decedent engaged in numerous acts of self-dealing with the Family Partnerships and/or the Property;

9. that the Decedent used funds and assets belonging to the Family Partnerships and/or the Property to make interest-free and forgivable loans to his family members and friends, at the expense of the Plaintiffs;

10. that the Decedent charged the Family Partnerships unjustified fees and expenses, that were not substantiated;

11. that the Decedent failed and refused to make timely and proper distributions to Plaintiffs from the Family Partnerships;

12. that the Decedent grossly mismanaged the Family Partnerships and/or the Property at issue in this Cause;

13. that the Decedent grossly mismanaged the Family Partnerships and/or the Property, by not obtaining long-term Leases and/or by charging rates far below the existing market rates;

14. that the Decedent grossly mismanaged the Family Partnerships and/or the Property, by not having a full and competent staff;

15. that the Decedent grossly mismanaged the Family Partnerships and/or the Property, by not keeping the property up-dated and repaired;

16. that the Plaintiffs ever offered to withhold any of their fixed distributions for the up-date and repair of the Property, at issue in this Cause;

17. that the Decedent grossly mismanaged the Family Partnerships and/or the Property by not treating the property with the same level of care, as his own properties;

18. that the Decedent refused to answer questions posed to him about the status and operation of the Family Partnerships and/or the Property;

19. that the Decedent granted any improper Deed of Trust to Billy Abraham, in connection with the Property at issue in this Cause;

20. that the Decedent failed to manage the Property at issue in this Cause, in a reasonable and prudent manner;

21. that the Decedent took advantage, to his gain and the detriment of Plaintiffs, of Business Opportunities of the Family Partnerships;

22. that Plaintiffs have suffered any damages, injuries or harm, as a result of the Decedent's actions and conduct, as alleged in Plaintiffs' Second Amended Original Petition filed in this Cause;

23. that the Decedent's conduct was intentional, willful and in conscious disregard to the rights and interests of the Plaintiffs;

24. that there is a cause of action anymore for Breach of Fiduciary Duty in Partnership dealings, in the State of Texas;

25. that Plaintiffs have suffered damages as a result of the purported Breach of Fiduciary Duty by the Decedent;

26. that the Decedent breached the duty of good faith, fair dealing, loyalty, and fidelity over the "Trusts' affairs and its principles";

27. that the Decedent breached the duty to make the assets of the Trusts productive while at the same time, preserving the assets;

28. that the Decedent breached the duty to fully disclose all material facts known to the Trustee, that might affect the beneficiaries' rights;

29. that the Decedent breached the duty to account to the beneficiaries, for all Trust transactions;

30. that the Decedent breached the duty to properly manage, supervise, and safe-guard Trust funds;

31. that the Decedent breached the duty to refrain from self-dealing with Trust assets;

32. that the Decedent breached the duty to refrain from lending Trust funds to himself or to one of his affiliates, employers, directors, officers, employees, or business associates;

33. that the Decedent breached the duty to invest and manage Trust assets as a prudent investor would, by considering the purposes, terms, distribution requirements, and other circumstances of the Trust;

34. that the Decedent breached the duty of loyalty to the partnership, the other partners, and any transferee of a deceased partner's partnership interest;

35. that the Decedent breached the duty of care to the partnership, the other partners, and any transferee of a deceased partner's partnership interest;

36. that the Plaintiffs are entitled to reasonable and necessary attorneys' fees pursuant to Texas Property Code Section 113.151 or Section 114.064;

37. that the Plaintiffs owned personal property held in Trust, which was managed by Decedent;

38. that the Decedent wrongfully acquired and exercised dominion and control over Plaintiffs' personal property;

39. that Plaintiffs have been damaged as a result of the Decedent's purported conversion of Plaintiffs' property by the Decedent;

40. that the Decedent's conduct as described in Plaintiffs' Second Amended Original Petition, constituted multiple violations of the Texas Trust Code;

41. that the Decedent did not exercise the judgment and care that, under the then-prevailing circumstances, a person of ordinary prudence, discretion and intelligence would exercise, in the management of their own affairs;

42. that the Decedent made material and false representations to Plaintiffs as Trustee, with the intent that Plaintiffs' act on those representations;

43. that the Decedent made representations to Plaintiffs that the Decedent knew were false or made the representations recklessly, as a positive assertion, and without knowledge of their truth;

44. that Plaintiffs did, in fact, rely on representations made by the Decedent, which caused Plaintiffs' injuries;

45. that Plaintiffs can corroborate the purported oral representations made to them by the Decedent, under the Dead Man's Rule;

46. that there was a valid, enforceable the contract between the Plaintiffs and Decedent, by which the Decedent was to provide competent management and investment services to Plaintiffs, in exchange for fees paid out of Plaintiffs' funds;

47. that Plaintiffs performed all of the conditions precedent for the enforcement of any contract between the Plaintiffs and Decedent;

48. that Plaintiffs performed, tendered performance of, or were excused from performing their contractual obligations of any contract between the Plaintiffs and the Decedent;

49. that the Decedent breached any contract between Plaintiffs and the Decedent;

50. that the Decedent failed to provide competent management and investment services on behalf of Plaintiffs;

51. that Plaintiffs previously complained to the Decedent, about the alleged failure to provide competent management services of behalf of Plaintiffs;

52. that Plaintiffs previously complained to the Decedent, about the alleged failure to provide competent investment services on behalf of Plaintiffs;

53. that Plaintiffs previously complained to the Decedent, about the alleged failure to make timely and property distribution to the Plaintiffs from the Family Partnership;

54. that Plaintiffs previously complained to the Decedent, about not obtaining long-term leases and/or by charging rates far below the existing market rate;

55. that Plaintiffs' previously complained to the Decedent, about not having a full and competent staff;

56. that Plaintiffs previously complained to the Decedent, about not keeping the property up-dated and repaired;

57. that Plaintiffs previously complained to the Decedent, about not treating their property with the same level of care, as his own properties;

58. that Plaintiffs were damaged by the Decedent purported failure to provide competent management and investment services on behalf of Plaintiffs;

59. that Plaintiffs are entitled to reasonable and necessary attorneys' fees under Section 38.001 of the Texas Civil Practice and Remedies Code;

60. that an error in judgment by the Decedent, while acting as a Managing Partner, by itself constitutes a Breach of the Duty of Care owed to Plaintiffs;

61. the amounts and methods by which Plaintiffs have calculated their economic damages, as contained in Plaintiffs' responses to Defendants' Requests for Disclosure;

62. that Plaintiffs are entitled to any award of any actual damages in this Cause;

63. that Plaintiffs are entitled to any award of exemplary or punitive damages in this Cause;

64. that Plaintiffs are entitled to any recovery of any court costs in this Cause;

65. that Plaintiffs are entitled to any pre-judgment or post-judgment interest in this Cause;

66. that Plaintiffs are entitled to any award of attorneys' fees in this Cause;

67. that Plaintiffs are entitled to the imposition of any Constructive Trust on the proceeds, funds or property obtained as a result of Decedent's purported Breach of Fiduciary Duty or violations of the Texas Trust; and

68. that Plaintiffs are entitled to the forfeiture of all fees collected by the Decedent;

69. that Plaintiffs are entitled to the disgorgement of all profits obtained by the Decedent; and

70. that Plaintiffs' request for an accounting revives their claims, that have been time-barred by law.

71. that Plaintiffs are entitled to any declaratory relief in this cause.

72. that the "Discovery Rule" applies to each and every cause of action asserted by Plaintiffs.

73. that the "Discovery Rule" applies to Plaintiffs' causes of action, in order to toll limitations.

74. that the Plaintiffs exercised reasonable diligence so as to allow the application of the "Discovery Rule".

75. that the "Discovery Rule" is recognized in Probate proceedings.

76. that the Courts will apply the "Discovery Rule" to claims arising from probate proceedings, even if the claim is for fraud.

77. that the "Continuing Tort Doctrine" applies to each and every tort asserted by Plaintiffs.

78. that the "Continuing Tort Doctrine" applies to Plaintiffs' causes of action in order to toll limitations.

79. that the Texas Supreme Court has recognized the "Continuing Tort Doctrine".

80. that the "Continuing Tort Doctrine" applies to Plaintiffs' causes of action-(it usually applies to causes of action such as Nuisance, Trespass and False Imprisonment).

81. that Plaintiffs can use declaratory relief to create substantive rights or causes of action that have already been barred by limitations.

82. that any Family Loans by the Decedent to Billy and Sib Abraham referred to in Plaintiffs' pleadings have **not** been repaid.

83. that Plaintiffs are entitled to any relief, whatsoever.

84. that the Plaintiffs have suffered any damages, injuries or harm, as a result of the Decedent's actions and conduct, as alleged in Plaintiffs' Supplemental Petition dated May 26th, 2015.

85. that the Decedent's conduct as described in Plaintiffs' Supplemental Petition dated May 26th, 2015, constituted multiple violations of the Texas Trust Code.

86. that the Decedent, EDDIE ABRAHAM "pointed out to Gilbert Malooly that he was also made the 'Trustee' of the interests of the Chagra children".

87. that Defendant WESTSTAR BANK made false and misleading misrepresentations in the Inventory of the Estate of EDWARD ABRAHAM.

88. that the Estate of EDWARD ABRAHAM is responsible for any error in payments that GILBERT MALOOLY made as the Managing Partner of the McCombs/McRae properties.

89. that $271,053.96 was overpaid to EDDIE ABRAHAM, out of the commercial revenues from the McCombs property.

90. that GILBERT MALOOLY had no reason to know that his wife, GERALDINE, owned an interest in the proceeds from the McCombs property.

91. that GILBERT MALOOLY had no reason to know that Plaintiffs, owned an interest in the proceeds from the McCombs property.

92. that EDDIE ABRAHAM concealed the fact that GERALDINE MALOOLY and the Plaintiffs each had a 25% percentage interest in Joseph Abraham's 50 percent undivided interest (or 12.5 percent of the McRae property).

93. that $583,700.00 was overpaid to EDDIE ABRAHAM, out of the Commercial Revenue from the McRae property.

94. that GILBERT MALOOOLY exercised due diligence as Managing Partner in connection with the McCombs property.

95. that GILBERT MALOOLY exercised due diligence as Managing Partner in connection with the McRae property.

96. that GILBERT MALOOLY had no duty to investigate Title to the McCombs/McRae properties between 1998 and November, 2014.

97. that GILBERT MALOOLY exercised any due diligence from 1998 until November, 2014, so as to allow application of the "Discovery Rule" in connection with the McCombs/McRae properties.

98. that Plaintiffs any exercised due diligence from 1998 until November, 2014, so as to allow application of the "Discovery Rule" in connection with the McCombs/McRae properties.

99. that the purported failure of WESTSTAR BANK to amend the Estate's Inventory in an on-going Probate Cause, constitutes a basis for any Cause of Action.

100.    that the Estates' Inventory for this Estate can be used as conclusive evidence in Plaintiffs' Second Amended Petition and Plaintiffs' Supplemental Petition filed May 26th, 2015.

101.    that Plaintiffs' have "Clean Hands" in this lawsuit.

102.     that the Decedent, EDDIE ABRAHAM defrauded Plaintiffs with regard to the McCombs/McRae properties.

103.     that the Decedent, EDDIE ABRAHAM defrauded GERALDINE AND GILBERT MALOOLY with regard to the McCombs/McRae properties.

104.     that the Decedent, EDDIE ABRAHAM made hundreds of fraudulent representations in the course of "this 16-year scheme".

105.     that the Decedent, EDDIE ABRAHAM engaged in a civil conspiracy to deprive Plaintiffs of their inheritance, rental payments, income, money, rights, claims, benefits, profits and/or property.

106.     that the Decedent, EDDIE ABRAHAM engaged in a civil conspiracy with JOSEPH "SIB" ABRAHAM for the common purpose or object of defrauding Plaintiffs to convert and defraud Plaintiffs of their rights.

107.     that any Family Loans made by the Decedent to JOSEPH "SIB" ABRAHAM, were not repaid.

108.     that Plaintiffs did not execute a General Release in connection with any Family Loans to made JOSEPH "SIB" ABRAHAM, by the Decedent, EDWARD ABRAHAM.

109.     that Plaintiffs suffered any damages as a proximate result of such Civil Conspiracy.

110.     that Decedent, EDDIE ABRAHAM, aided and abetted the purported harm Plaintiffs suffered as a result of the tortious conduct committed by JOSEPH "SIB" ABRAHAM.

111.     that Decedent, EDDIE ABRAHAM knew that JOSEPH "SIB" ABRAHAM's conduct constituted a breach of duty and gave substantial assistance and encouragement, to accomplish such a tortious result.

112.     that Plaintiffs suffered any damages as a result of such purported abiding and abetting.

113. That Plaintiffs' causes of action contained in the Supplemental Petition dated May 26th, 2015 concerning the McCombs/McRae Properties relate back to the date of the filing of their first lawsuit filed in 2012.

114. that Plaintiffs' causes of action contained in Plaintiffs' Supplemental Petition dated May 26th, 2015 were based on the same transaction or occurrence as contained in their first lawsuit filed in 2012.

115. that the Decedent, EDWARD ABRAHAM committed any continuing fraud on the Plaintiffs in connection with the McCombs/McRae properties.

## III.

## AFFIRMATIVE DEFENSES

1. For further Answer if any is necessary, Defendant alleges by **First Affirmative Defense** that there is no longer a Cause of Action for the Breach of Fiduciary Duty in Partnership Dealings in the State of Texas, and the rights, obligations and duties of partners have been codified in the Texas Business Organizations Code since January 1, 2010, regardless of when the partnership was formed. More specifically, Defendant contends that the Decedent conducted himself in a manner that he reasonably believed was in the best interest of the partnership, and acted in good faith. Moreover, it is disingenuous for the Plaintiffs to allege that the Decedent did not keep the subject Property "up-dated and repaired" when they never offered to withhold any of their distributions for such up-date and repair, and resisted all efforts of the Decedent to obtain loan financing for such up-date and repair. Finally, the Plaintiffs are attempting to substitute their Business Judgment for that of the Decedent, years after agreeing to and accepting fixed distributions, regardless of Tenancy Occupancy of the Property at issue, and never previously complaining to the Decedent, about their distributions.

2. For further Answer, if any is necessary, Defendant alleges by **Second Affirmative Defense** that Section 152.204 of the Texas Business Organizations Code has governed all Partnership Dealings in the State of Texas since January 1st, 2010, regardless of when the partnership was formed. More specifically, Defendant contends under Section 152.204(d) that the Decedent, in his capacity as Managing Partner, was **not** a Trustee and is **not** held to the standards of a Trustee. Moreover, under Section 152.204(c), Defendant contends that the Decedent did **not** violate a duty or obligation under the Texas Business Organizations Code or under the Partnership Agreement, merely because his conduct furthered his own interests.

3. For further Answer, if any is necessary, Defendant alleges by **Third Affirmative Defense** that Section 152.206 of the Texas Business Organizations Code has governed all Partnership Dealings in the State of Texas since January 1, 2010, regardless of when the partnership was formed. More specifically, Defendant contends under Section 152.206(b), that an error in Judgment by the Decedent, while acting as Managing Partner, does **not** by itself constitute a breach of the duty of care, owed to Plaintiffs.

4. For further Answer, if any is necessary, Defendant alleges by **Fourth Affirmative Defense** that Section 152.211 of the Texas Business Organizations Code has governed all Remedies of Partners in a Partnership since January 1st, 2010. More specifically, Defendant contends under Section 152.211(d), that Plaintiffs' right to an accounting does **not** revive their claims that have been barred by law. For example, in this case, Plaintiffs are attempting to use their right to an accounting to justify their claims of misconduct extending more than 12 years, and which have been barred by law. This is prohibited by the express statutory language of Section 152.211(d) of the Texas Business Organizations Code.

5. For further Answer, if any is necessary, Defendant alleges by **Fifth Affirmative Defense** that Section 152.212 of the Texas Business Organizations Code has governed the books and records of a Partnership, since January 1st, 2010. More specifically, Section 152.212(e) provides that a reasonable charge covering the costs of labor and material, for copies of documents furnished to a partner, may be charged. Accordingly, the express statutory language of Section 152.212(e) provides for reasonable charges, covering the cost of copies of books and records, that Plaintiffs complain about in Paragraph 16 of Plaintiffs' Second Amended Original Petition.

6. For further Answer, if any is necessary, Defendant alleges by **Sixth Affirmative Defense** the failure of a Condition Precedent, in that the Plaintiffs allege that the Decedent failed to keep the Property at issue "up-dated and repaired" yet never agreed to withhold any of their fixed distributions to fund such up-date and repair, and never agreed for the Decedent to obtain loan financing for such up-date and repair. Consequently, the Plaintiffs cannot have it both ways, i.e. complain about the Decedent not keeping the Property up-dated and repaired, while never agreeing to withhold any fixed distributions to provide funding for such up-date and repair, and never agreeing to loan financing to remedy what they are now complaining about. Furthermore, the Plaintiffs never previously complained to the Decedent about the purported failure to up-date and repair the property or about the purported shortage of their distributions.

7. For further Answer, if any is necessary, Defendant alleges by **Seventh Affirmative Defense** that Plaintiffs are Estopped from making the claims that form the basis of Plaintiffs' Second Amended Original Petition. More specifically, Plaintiffs are estopped from claiming that the Decedent failed to keep the Property at issue "up-dated and repaired", because they never agreed for the Decedent to obtain loan financing for such up-date or repair, and never agreed

to withhold their Fixed Distribution to provide funds for such up-date and repair. Moreover, the Plaintiffs are also estopped from claiming that the Decedent did **not** provide timely or proper distributions, because for years, they agreed to and accepted a fixed distribution from the Decedent, regardless of the Tenant Occupancy of the subject Property at issue in this Cause. Finally, the Plaintiffs are estopped from using their request for accounting or declaratory relief as procedural devices to revive clams that have been time-barred by law.

8. For further Answer, if any is necessary, Defendant alleges by way of **Eighth Affirmative Defense** that Plaintiffs have Waived the right to recover distributions that they allege were not timely and properly made. More specifically, for years, the Plaintiffs agreed to and accepted fixed distributions, regardless of the Tenant Occupancy of the subject Property at issue in this Cause. Consequently, the Plaintiffs waived their rights to now claim that they should have been receiving a greater distribution, and they should not now be allowed to renegotiate their deal with the Decedent, retroactively.

9. For further Answer, if any is necessary, Defendant alleges by way of **Ninth Affirmative Defense** the Doctrines of Ratification and/or Acquiescence. More specifically, the Plaintiffs have either ratified or acquiesced in their claim that distributions were not timely or properly made, because for years, the Plaintiffs have agreed to and accepted Fixed Distributions, regardless of Tenant Occupancy of the subject Property at issue in this Cause. Based upon Plaintiffs' agreement and acceptance for years of those Fixed Distributions, the Decedent acted in good faith and in a manner reasonably believed to be in the best interests of the Partnership. Consequently, the Plaintiffs either ratified or acquiesced to those fixed distributions that they had received for years, regardless of Tenancy Occupancy of the subject

Property, at issue in this Cause, and they should not now be allowed to renegotiate their deal with Decedent, retroactively.

10. For further Answer, if any is necessary, Defendant alleges by way of **Tenth Affirmative Defense**, the Doctrine of Laches. More specifically, for years, the Plaintiffs agreed and accepted a Fixed Distribution, regardless of Tenant Occupancy in the subject Property, at issue in this Cause. Based upon Plaintiffs' agreement and acceptance for years of those Fixed Distributions, the Decedent acted in good faith and in a manner reasonably believed to be in the best interests of the Partnership. Consequently, the Doctrine of Laches bars Plaintiffs from now changing their position in view of the Fixed Distributions that they had agreed to and accepted for years, regardless of Tenant Occupancy of the subject Property at issue in this Cause, and they should not now be allowed to change their position, and renegotiate their deal with the Decedent, retroactively.

11. For further Answer, if any is necessary, Defendant alleges by **Eleventh Affirmative Defense** that Plaintiffs' suit is barred by Limitations. More specifically, Defendant alleges that conspicuously absent from Plaintiffs' Second Amended Original Petition are any specific dates of the Decedent's purported self-dealing, misconduct and mismanagement (other than the vague reference to repeated requests for an accounting "over the past eighteen months" contained in paragraph 17) Moreover, Plaintiffs' cause of action for Conversion is barred by a two (2) year Statute of Limitations contained in Section 16.003(a) of the Texas Civil Practice and Remedies Code. Similarly, Plaintiffs causes of action for Breach of Contract, violations of the Trust Code, Fraud, and Breach of Fiduciary Duty are barred by the four (4) year Statute of Limitations contained in Sections 16.004(a) and 16.051 of the Texas Civil Practice and Remedies Code. Consequently, Plaintiffs claims are most likely barred by Limitations,

because of the lack of any specific dates contained in Plaintiffs' Second Amended Original Petition. For years, the Plaintiffs agreed to and accepted Fixed Distributions, regardless of Tenant Occupancy of the subject property, and they should not now be allowed to renegotiate their deal with the Decedent, retroactively.

12. For further Answer, if any is necessary, Defendant alleges by **Twelfth Affirmative Defense** that any Oral Agreement alleged in Plaintiffs' Second Amended Original Petition is **unenforceable**, because of the Statute of Frauds. More specifically, the Plaintiffs allege **oral Family Agreements** with respect to **Real Property** and which were **not** performable within a year. Such Oral Agreements, with the Decedent, even if they were actually made, are unenforceable, pursuant to Section 26.01 *et. seq.* of the Texas Business and Commerce Code and the Statute of Frauds.

13. For further Answer, if any is necessary, Defendant alleges by way of **Thirteenth Affirmative Defense** that the Dead Man's Rule contained in Rule 601 of the Texas Rules of Evidence renders Plaintiffs allegations about the Decedent's Statements inadmissible into evidence in a civil action. More specifically, Plaintiffs' Second Amended Original Petition is based on numerous, uncorroborated oral statements by the Decedent, that are not admissible into Evidence in this Probate Cause, and which should be excluded under Rule 601(b).

14. For further Answer, if any is necessary, Defendant alleges by way of **Fourteenth Affirmative Defense** that the Texas Trust Code applies only to Express Trusts and does **not** apply to issues of fiduciary liability arising in the context of Resulting Trusts, Constructive Trusts, Business Trusts, or Partnerships; nor does the Texas Trust Code apply in those cases in which an individual takes title to a piece of property in his name as Trustee, without a formal Trust declaration.

15. For further Answer, if any is necessary, Defendant alleges by way of **Fifteenth Affirmative Defense** with regard to Decedent's conduct complained about by Plaintiffs, the Decedent acted in good faith, and was not guilty of bad faith, self-dealing, or reckless indifference towards Plaintiffs' interests or rights. Moreover, the Decedent exercised the judgment and care that, under the then-prevailing circumstances, a person of ordinary prudence, discretion and intelligence would exercise in the management of their own affairs i.e. the prudent person standard.

16. For further Answer, if any is necessary, Defendant alleges by way of **Sixteenth Affirmative Defense** that Plaintiffs claims are barred, in whole or in part, due to Plaintiffs' own negligence, in that Plaintiffs failed to exercise ordinary care, or exercise reasonable diligence, which proximately caused in whole or in part the injuries and damages, if any, complained of by the Plaintiffs. More specifically, for years the Plaintiffs agreed to and accepted a Fixed Distribution, regardless of Tenant Occupancy in the subject property, at issue in this cause, and Plaintiffs never complained about any failure of the Decedent to keep the property updated and repaired, and Plaintiffs never complained to the Decedent about any shortages of distribution. Moreover, Plaintiffs failure to exercise reasonable defense is also an Affirmative Defense to Plaintiffs' assertion of the "Discovery Rule".

17. For further Answer, if any is necessary, Defendant alleges by way of **Seventeenth Affirmative Defense** of Proportionate Responsibility. More specifically, Plaintiffs injuries and damages, if any, can be attributed to several causes and should be approportioned among the various causes according to the respective contributions of such causes to the harm sustained.

18. For further Answer, if any is necessary, Defendant alleges by way of **Eighteenth Affirmative Defense** the erroneous calculation of Plaintiffs' Economic Damages. More specifically Defendant challenges the amount and method by which Plaintiffs have calculated their economic damages, as well as the "Simple Math" contained in Plaintiffs' Responses to Defendant's Requests for Disclosure, which does **not** contain any offset or credit whatsoever for the distributions paid to the Plaintiffs over 25 years, and exceeds the Statute of Limitations by 21 years. Finally, such calculation of economic damages includes 100% of the income stream from properties in which Plaintiffs had no more than 25% of the assets in question.

19. For further Answer, if any is necessary, Defendant alleges by way of **Nineteenth Affirmative Defense** the statutory cap for exemplary damages. More specifically, Defendant invokes the limitations on the amount of exemplary damages recoverable that is contained in Section 41.008 of the Texas Civil Practice and Remedies Code.

20. For further Answer, if any is necessary, Defendant alleges by way of **Twentieth Affirmative Defense** the standards for exemplary damages. More specifically, Defendant alleges the standards for recovery of exemplary damages as contained in Section 41.003 of the Texas Civil Practice and Remedies Code, in that the Plaintiffs must prove by **clear and convincing evidence** that the harm with respect to which the Plaintiffs seek recovery of exemplary damages, is based on fraud, malice or gross negligence; and that exemplary damages **not** be awarded unless the Jury Verdict is unanimous.

21. For further Answer, if any is necessary, Defendant alleges by way of **Twenty-First Affirmative Defense** that while Plaintiffs claim the "Discovery Rule" applies to all of their causes of action. Courts will **not** apply the Discovery Rule to claims arising from probate proceedings, even if the Claim is for fraud. *Mooney v. Harlin*, 622 S.W.2d 83, 85 (Tex. 1981);

*Neill v. Yett*, 746 S.W.2d 32, 35-36 (Tex. App.-Austin 1988, writ denied). Consequently, Plaintiffs' claims are conclusively barred by limitations, particularly since the "Discovery Rule" cannot be applied in this cause. Moreover, Plaintiffs failure to exercise reasonable diligence also precludes application of the "Discovery Rule" in this Cause.

22. For further Answer, if any is necessary, Defendant alleges by way of **Twenty-Second Affirmative Defense** that the "Continuing Tort Doctrine" has not been recognized by the Texas Supreme Court. Moreover, it does not apply to Plaintiffs' Tort Causes of Action in this Cause. More specifically, the "Continuing Tort Doctrine" traditionally applies to causes of action such as Negligence, Trespass and False Imprisonment, and not those asserted by Plaintiffs in this suit.

23. For further Answer, if any is necessary, Defendant alleges by way of **Twenty-Third Affirmative Defense** that Plaintiffs are attempting to use a procedural device (a Declaratory Judgment Action) to create substantive rights or causes of action, in order to forfeit fees and profits received by the Decedent. Having let the Statute of Limitations for all of their causes of action run, Plaintiffs are attempting to use their Declaratory Judgment Action as an end-run, cause of action for the Court to impose a Constructive Trust and the forfeiture of all fees collected by Decedent, and for the disgorgement of all profits obtained by Decedent. This is an improper use of a Declaratory Judgment Action, because it is decidedly focused on the past, seeking back-ward looking, money damages. *Intercontinental Group Partnership v. KB Home Lone Star, L.P.*, 295 S.W.3d 650, 660 (Tex. 2009). As the Texas Supreme Court held in *Intercontinental Group*, a Declaratory Judgment Action, like a Contract, covers an action "to declare right". . . and by its nature, is forward-looking and designed to resolve a controversy and prevent future damages . . . and not for backward-looking money damages.

*Supra, at 660.* Consequently, Plaintiffs' pleadings are a poorly-disguised attempt to use a Declaratory Judgment action as a procedural devise to create substantive rights or causes of action that have already been barred by Limitations, in order to forfeit fees and disgorgement profits.

24. For further Answer, if any is necessary, Defendant alleges by way of **Twenty-Fourth Affirmative Defense** alleges Release, Accord and Satisfaction as to the Family Loans which the Decedent made to Billy and Sib Abraham and which are alleged in Plaintiffs' pleadings. More specifically, the "General Release" executed by among others, Plaintiffs TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER, constituted a complete Release, Accord and Satisfaction of all Claims related to such Family Loans, including Causes of Action for Civil Conspiracy and Aiding and Abetting.

25. For further Answer, if any is necessary, Defendant alleges by way of **Twenty-Fifth Affirmative Defense** that the New Causes of Action contained in Plaintiffs' Supplemental Petition dated May 26th, 2015, do not relate back to their initial filing, under Section 16.068 of the Civil Practice and Remedies Code. Plaintiffs' Supplemental Petition filed May 26th ,2015 contains three (3) new Causes of Action not found in either their initial Petition or their First Amended Petition, namely: Money Had and Received (Seventh Cause of Action); Civil Conspiracy (Eighth Cause of Action); and Civil Aiding and Abetting (Ninth Cause of Action). These new Causes of Action clearly do not relate back to the Plaintiffs' initial Petition or their First Amended Petition, because they are based on new, distinct transactions or occurrences (the McCombs/McRae Properties).

Section 16.068 of the Texas Rules of Civil Practice and Remedies Code expressly provides:

If a filed pleading relates to a cause of action, cross-action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitations unless the amendment or supplement is wholly based on a new distinct, or difference transaction or occurrence.

Clearly, these three (3) new Causes of Action contained in Plaintiffs' Supplemental Petition filed May 26th, 2015 are based on new, distinct and different, transactions or occurrences, than what were contained in either their initial Petition or their First Amended Petition. Consequently, these three (3) new Causes of Action, are subject to a Plea of Limitation, and the operative date for calculating Limitations is **May 26th, 2015**, when they were first raised by the Plaintiffs for these new, different and distinct, transactions or occurrence.

26. For further Answer, if any is necessary, Defendant alleges by **Twenty-Sixth Affirmative Defense**, the purported failure to amend an Estate Inventory in an on-going Probate Cause, does **not** constitute the basis for a Cause of Action for Fraud, Breach of Fiduciary Duty or Misrepresentation, or anything else. Rather, the correct procedure is to file suit to Correct an Erroneous or Unjust Inventory Under Section 309.103 of the Texas Estates Code. Accordingly, Plaintiffs are improperly using this Estate's Inventory as conclusive evidence in their Supplemental Petition dated May 26th, 2015, contrary to Section 309.151 of the Texas Estates Code.

27. For further Answer, if any is necessary, Defendant alleges by **Twenty-Seventh Affirmative Defense** of Doctrine of Unclean Hands. Plaintiffs' attempt to improperly use the Estate's Inventory as evidence, is in violation of Section 309.151 of the Texas Estates Code, constitutes "Unclean Hands". Moreover, Plaintiffs, while **not** suing the Managing Partner (GILBERT MALOOLY), for payments allegedly due the McCombs/McRae Commercial Properties, are

attempting to shift the blame for GILBERT MALOOLY's errors in making distributions, to the Decedent, EDWARD ABRAHAM, who cannot defend himself.

28. For further Answer, if any is necessary, Defendant alleges by **Twenty-Eighth Affirmative Defense**, the Doctrine of Laches with regard to the McCombs/McRae Properties. More, specifically, for years, GILBERT MALOOLY, was the Managing Partner of the McCombs/McRae Properties, and, as such, was responsible for the appropriate payments of Partnership distributions. During that time, Plaintiffs never exercised any due diligence to determine their exact percentage of ownership in the McCombs/McRae Properties. Consequently, the Doctrine of Laches bars the Plaintiffs from changing their position in their attempt to shift the blame for GILBERT MALOOLY's errors as Managing Partner, to the Decedent, EDWARD ABRAHAM, who cannot now defend himself. Simply put, Plaintiffs should be suing the Managing Partner, GILBERT MALOOLY, for any distributions that Plaintiffs claim they are due, from the McCombs/McRae Properties.

29. For further Answer, if any is necessary, Defendant alleges by way of **Twenty-Ninth Affirmative Defense**, that Plaintiffs have failed to comply with any Statutory basis for recovery of any Attorney's Fees, whatsoever.

## IV.

## DEFENDANT'S THIRD AMENDED ORIGINAL COUNTER-CLAIM

Separately from the foregoing Answer, Defendant WESTSTAR BANK HOLDING COMPANY, INC., AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED as Counter-Claim Plaintiff, complains of Plaintiffs TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER list, as Counter-Claim Defendants, and for Cause of Action alleges the following by way of Counter-Claim:

## A. First Cause of Action: Declaratory Relief

Defendant/Counter-Claim Plaintiff WESTSTAR BANK HOLDING COMPANY, INC., AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED incorporates by reference Plaintiffs' Second Amended Original Petition filed in this Probate Cause, and Plaintiffs' Supplemental Petition dated May 26th, 2015, and files this Third Amended Original Counter-Claim for Declaratory Judgment pursuant to Chapter 37 of the Texas Civil Practice and Remedies Code and particularly Section 37.005 pertaining to Estates for a Declaratory Judgment: 1) of the legal owners of each parcel of Real Property at issue in this Cause, including the McCombs/McRae Properties; 2) whether the Decedent was the Managing Partner of any Family Partnership; 3) whether such Family Partnership actually owned such parcels of Real Property, at issue in this Cause; 4) whether the Decedent acted in the capacity of a Trustee; 5) whether such Trust actually owned any such parcels of real property, at issue in this Cause; 6) the exact percentage ownership of the such parcels of real property, at issue in this Cause, including the McCombs/McRae properties.

## V.

## ATTORNEY'S FEES

Defendant/Counterclaim Plaintiff WESTSTAR BANK HOLDING COMPANY, INC., AS INDEPENDENT EXECUTOR OF THE ESTATE OF EDWARD ABRAHAM, DECEASED has retained the Law Firm of Darron Powell, PLLC, to represent the Estate in this action and to prosecute their Original Counter-Claim, as Amended, and has agreed to pay the firm a reasonable fee for

necessary legal services. An award of attorney's fees to Defendant/Counter-Claim Plaintiff would be equitable and just and authorized by Section 37.009 of the Texas Civil Practice and Remedies Code.

## VI.

## JURY DEMAND

Defendants/Counter-Plaintiffs requests a Trial by Jury.

## VII.

## PRAYER

WHEREFORE, Defendant/Counter-Claim Plaintiff requests judgment of the Court that Plaintiffs/Counter-Claim Defendants take nothing by their suit, and that Defendant/Counter-Claim Plaintiff recover all costs incurred in defense of Plaintiffs/Counter-Claim Defendants' suit, and that Defendant/Counter-Claim Plaintiff, have judgment against Plaintiffs/Counter-Claim Defendants for declaratory relief, as well as:

1) Reasonable and necessary attorney's fees as allowed by Section 37.009 of the Texas Civil Practice and Remedies Code.

2) Costs of suit; and

3) Such other and further relief to which Defendant/Counter-Claim Plaintiff may be justly entitled.

Respectfully submitted,

DARRON POWELL, Esq.
Attorney for Defendants
1517 Campbell
El Paso, Texas 79902
(915) 313-0081-Telephone
(915) 313-0091-Facsimile
State Bar No. 24027632

## CERTIFICATE OF SERVICE

I, DARRON POWELL, do hereby certify that I have delivered a true and correct copy of the foregoing to Plaintiffs/Third-Party Defendants, TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER, by and through their Attorneys of Record, Sam J. Legate, Esq., SCHERR & LEGATE, PLLC., Attorneys at Law, 109 North Oregon, 12th, Floor, El Paso, Texas 79901, and Jerome M. Karam, Esq., Law Office of Jerome Karam, 308 W. Parkwood, Suite 104A, Friendswood, Texas 77546, and to Intervenor, GILBERT MALOOLY, by and through their Attorneys of Record, Mark C. Walker, Esq., COX SMITH MATTHEWS INCORPORATED, 221 North Kansas Street, Suite 2000, El Paso, Texas 79901 and to Thomas E. Stanton, Esq., 409 Oakcrest, Cedar Park, Texas 78613, and Texas Attorney General, by and through its Attorney of Record, Jeanine Coggeshall, Assistant Attorney General, 300 West 15th Street, 11th Floor, Austin, Texas 78701, on this the ____8____ day of ____June____, 2015.

DARRON POWELL

# GENERAL RELEASE

This General Release ("Release") is executed by Teresa Finnegan, Christina Chagra, Lee A. Chagra, Jr., Leslie Karam, and Joanna Krancher ("Claimants"). Joseph (Sib) Abraham ("Borrower") and Claimants are hereinafter referred to collectively as "the parties."

1. **Recitals.**

WHEREAS, to the best of Claimants' knowledge and based on the representations of Edward Abraham, Managing Partner of Hondo Village Shopping Center, a Partnership ("Hondo Village Shopping Center") and Trustee of Claimants' interest in the Hondo Village Shopping Center, Claimants are owed a total of $85,638.13 as of April 29, 2011, by Joseph (Sib) Abraham, Jr. ("Borrower") pursuant to the attached Promissory Note ("Hondo Village Note") payable by Borrower to Hondo Village Shopping Center (Claimants owning a 25% interest in Hondo Village Shopping Center, A Partnership) executed on or about February 4, 2009, in the original principal amount of $495,476.25 ("Hondo Village Note") whereby the principal balance of the Hondo Village Note as of April 25, 2011, is $342,552.52, according to Edward Abraham and Joseph (Sib) Abraham, Jr., Borrower.

WHEREAS, to the best of Claimants' knowledge and based on the payoff amount of their respective 25% interest in the Hondo Village Note as calculated and provided by Edward Abraham, Managing Partner and Trustee of Claimants' interest in Hondo Village Shopping Center, and Joseph (Sib) Abraham, Jr., Borrower, Borrower has paid Claimants in full all amounts owed to Claimants as of April 25, 2011, pursuant to the Hondo Village Note, which amounts Claimants acknowledge receiving.

NOW, THEREFORE, in consideration of the recitals and agreements contained herein, Claimants hereby agree as follows:

2. **Release.**

Claimants agree that they have been compensated in full for all amounts Borrower owes Claimants by virtue of their interest in the Hondo Village Note. As a result, Claimants agree to release Borrower and acquit and forever discharge Borrower of and from his indebtedness to them for their interest in Borrower's loan from Hondo Village Shopping Center as memorialized in the Hondo Village Note. Claimants specifically release their right to seek compensation for and satisfaction of their interest (by any legal means necessary) in any alleged deficiency or shortage in the payoff amount provided by Edward Abraham and Joseph (Sib) Abraham, Jr. and for any alleged failure of Edward Abraham and/or Joseph (Sib) Abraham, Jr. to abide by and enforce the specific contractual provisions and obligations of Borrower with regard to the Hondo Village Note.

1

PENGAD 800-631-6989

EXHIBIT

"A"

1730

THE STATE OF TEXAS )
)
COUNTY OF Galveston )

This instrument was acknowledged before me on May 4 2011, by Leslie Kavan, Joanna Krancher.

SEAL:

AREZOO POURGAHAN
My Commission Expires
November 27, 2011

_____
Notary Public, State of Texas

3

1.732

# GENERAL RELEASE

This General Release ("Release") is executed by Teresa Finnegan, Christian Chagra, Lee A. Chagra, Jr., Leslie Karam, and Joanna Krancher ("Claimants"). Joseph (Sib) Abraham ("Borrower") and Claimants are hereinafter referred to collectively as "the parties."

1. Recitals.

WHEREAS, to the best of Claimants' knowledge and based on the representations of Edward Abraham, Managing Partner of Hondo Village Shopping Center, a Partnership ("Hondo Village Shopping Center") and Trustee of Claimants' interest in the Hondo Village Shopping Center, Claimants are owed a total of $85,638.13 as of April 29, 2011, by Joseph (Sib) Abraham, Jr. ("Borrower") pursuant to the attached Promissory Note ("Hondo Village Note") payable by Borrower to Hondo Village Shopping Center (Claimants owning a 25% interest in Hondo Village Shopping Center, A Partnership) executed on or about February 4, 2009, in the original principal amount of $495,476.25 ("Hondo Village Note") whereby the principal balance of the Hondo Village Note as of April 25, 2011, is $342,552.52, according to Edward Abraham and Joseph (Sib) Abraham, Jr., Borrower.

WHEREAS, to the best of Claimants' knowledge and based on the payoff amount of their respective 25% interest in the Hondo Village Note as calculated and provided by Edward Abraham, Managing Partner and Trustee of Claimants' interest in Hondo Village Shopping Center, and Joseph (Sib) Abraham, Jr., Borrower, Borrower has paid Claimants in full all amounts owed to Claimants as of April 25, 2011, pursuant to the Hondo Village Note, which amounts Claimants acknowledge receiving.

NOW, THEREFORE, in consideration of the recitals and agreements contained herein, Claimants hereby agree as follows:

2. Release.

Claimants agree that they have been compensated in full for all amounts Borrower owes Claimants by virtue of their interest in the Hondo Village Note. As a result, Claimants agree to release Borrower and acquit and forever discharge Borrower of and from his indebtedness to them for their interest in Borrower's loan from Hondo Village Shopping Center as memorialized in the Hondo Village Note. Claimants specifically release their right to seek compensation for and satisfaction of their interest (by any legal means necessary) in any alleged deficiency or shortage in the payoff amount provided by Edward Abraham and Joseph (Sib) Abraham, Jr. and for any alleged failure of Edward Abraham and/or Joseph (Sib) Abraham, Jr. to abide by and enforce the specific contractual provisions and obligations of Borrower with regard to the Hondo Village Note.

1



EXHIBIT

"A"

1730

THE STATE OF TEXAS )

COUNTY OF _Galveston_ )

 This instrument was acknowledged before me on _May 4_

2011, by _Leslie Kazan, Joanna Krancher_.

SEAL:

AREZOO POURGARAH
My Commission Expires
November 27, 2011

_____
Notary Public, State of Texas

3

1732

A-3

TERI FINNEGAN, LEE CHAGRA, JR., and §
JOANNA KRANCHER, §
　　　　　　　　　　　　　　　　　　§
　　　Plaintiffs/Third-Party Defendants, §
　　　　　　　　　　　　　　　　　　§
v. §
　　　　　　　　　　　　　　　　　　§
JAMES KIRBY READ, as Permanent §
Dependent Administrator with Will and §
Codicil Annexed for the Estate of EDWARD §
ABRAHAM, Deceased, §
　　　　　　　　　　　　　　　　　　§
　　　Defendant/Third-Party Plaintiff, §　　　　Cause No. 2012-CPR03934
　　　　　　　　　　　　　　　　　　§
v. §
　　　　　　　　　　　　　　　　　　§
LESLIE C. KARAM, Individually, §
　　　　　　　　　　　　　　　　　　§
　　　Third-Party Defendant, §
　　　　　　　　　　　　　　　　　　§
and §
　　　　　　　　　　　　　　　　　　§
GILBERT MALOOLY, Individually, and §
with CHRIS MALOOLY, as Personal §
Representative of the Estate of §
GERALDINE MALOOLY, §
　　　　　　　　　　　　　　　　　　§
　　　Intervenors. §
　　　　　　　　　　　　　　　　　　§
TINA CHAGRA §
　　　　　　　　　　　　　　　　　　§
　　　Intervenor. §
v. §
　　　　　　　　　　　　　　　　　　§
JAMES KIRBY READ, as Permanent §
Dependent Administrator with Will and §
Codicil Annexed for the Estate of EDWARD §
ABRAHAM, Deceased, §
　　　　　　　　　　　　　　　　　　§
　　　Defendants. §

1

## MALOOLY INTERVENORS' OBJECTIONS TO JAMES KIRBY READ'S APPLICATION FOR A DISTRIBUTION OF $12,000,000.00

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME Intervenors Gilbert Malooly, Individually, and with Chris Malooly, as Personal Representatives of the Estate of Geraldine Malooly (collectively the "Malooly Intervenors") and file this objection in opposition to James Kirby Read's application made for a partial inheritance distribution to the El Paso Community Foundation for $12,000,000.00, and in support thereof, Intervenors would respectfully show this Honorable Court the following:

### I. SUMMARY OF ARGUMENT

There is simply no legal authority for the requested partial inheritance distribution to the El Paso Community Foundation in light of the vast sums of monies at issue in the pending litigation; the outrageous course and conduct by the decedent, Edward Abraham, at issue in the pending litigation; and the decedent's tortious and criminal history which makes the otherwise-applicable statutory cap on exemplary damages inapplicable. Accordingly, the Court should deny the successor permanent dependent administrator's application for a partial inheritance distribution to the El Paso Community Foundation in the amount of $12,000,000.00.

### II. RELIEF REQUESTED

Intervenors respectfully request that this Court deny the successor permanent dependent administrator's application for a partial inheritance distribution to the El Paso Community Foundation in the amount of $12,000,000.00. The Court should refrain from distributing any assets from the estate of Edward Abraham until such time as Plaintiffs' and Intervenors' claims are resolved by the jury, including claims for constructive trust and exemplary damages. It would be improper to grant the requested application while the Plaintiffs' and Intervenors' claims remain pending, and as such the Court should prevent any attempt by the successor dependent

2

administrator to prejudice Intervenors' rights and claims with regard to the estate's assets. Intervenors are interested parties in this matter under the Texas Estates Code and therefore have standing to appear and object to the administrator's application. Alternatively, the Court should require the El Paso Community Foundation to post a bond that would adequately protect the Malooly Intervenors' right to recover the full amount of any potential judgment impacted by the partial inheritance distributions sought by Defendant.

### III. INCORPORATION BY REFERENCE

In support of Malooly Intervenors' objection and to show the full extent of Malooly Intervenors' legal and factual allegations, claims, causes of action, and request for damages, Malooly Intervenors hereby incorporate by reference, as if fully set forth herein, *Malooly Intervenors' Third Amended Petition in Intervention*, filed on or about March 27, 2017.

### IV. ARGUMENT & AUTHORITIES

**A.     MALOOLY INTERVENORS ARE STILL INTERESTED PARTIES & HAVE STANDING.**

As this Court has previously found, the Malooly Intervenors are clearly interested persons as defined in the Texas Estates Code and therefore have clear standing to appear and contest the dependent administrator's application:

"Interested person" or "person interested" means:

(1)     an heir, devisee, spouse, creditor, <u>or any other having a property right in or claim against an estate being administered</u>; and

(2)     anyone interested in the welfare of an incapacitated person, including a minor.

TEX. ESTATES CODE § 22.018.

The Malooly Intervenors are also "interested parties" by virtue of the Texas Trust Code, as set forth in the Texas Property Code, which provides a definition of an "Interested Party" in Section 111.004:

3

"(4) Interested Person" means a trustee, beneficiary, or other person having an interest in or a claim against the trust or any person who is affected by the administration of the trust.

Further, paragraph 2 of that same section provides the definition of a beneficiary:

"a beneficiary means a person for whose benefit property is held in trust, regardless of the nature of the interest."

In addition, the term "Expressed Trust" is defined in sub-paragraph (4) in the same code section and Joseph Abraham, Sr.'s testamentary trust is within the terms of an "Expressed Trust"

Section 114.001, Texas Trust Code, "Liability of the Trustee to Beneficiary," provides that the trustee is accountable to the beneficiary; "... for trust property and for any profit made by the trustee through or arising out of the administration of the trust;"

The claims of the interested persons [i.e., the Malooly Intervenors, among others] arise out of a trust relationship, *i.e.*, property right that the Decedent accepted for the benefit of the Malooly Intervenors until the date of his death. The mere fact that the trustee died does not relieve the Decedent of his fiduciary duty to the beneficiaries of the trust. The beneficiaries of the trust are also "interested persons" and thus have an interest in the Estate of Edward Abraham, Deceased, by statutory definition and for a determination of that portion of Trust property that is co-mingled with the Decedent's Estate.

B.  EDWARD ABRAHAM'S CONTINUING TORTS REGARDING THE "MCRAE" & "MCCOMBS" PROPERTIES.

Commencing in or about October 1998, Eddie Abraham served as the executor of the estate of Joseph Abraham Sr., was the father of Geraldine Malooly (the mother of the Chagra Plaintiffs). Eddie Abraham was the brother of Geraldine Malooly and the uncle of the Chagra Plaintiffs. Eddie Abraham represented to Gilbert Malooly that he was also made the "Trustee" of the interests of the Chagra children.

4

Eddie Abraham managed the business of the Joseph Abraham Sr. properties and represented to Plaintiffs and Gilbert and Geraldine Malooly, what properties were within the estate of Joseph Abraham Sr. and which interests had been conveyed to him or to Joseph Sib Abraham prior to the death of Joseph Abraham Sr. Malooly Intervenors relied on the representations of Eddie Abraham as to the ownership interests in the properties and their reliance was reasonable. Similarly, WestStar Bank (when acting as the administrator) apparently relied on the records of Eddie Abraham located in his estate in initially preparing the inventory filed with this Court.

On January 30, 2013, this Court approved the inventory of the Eddie Abraham estate filed by WestStar Bank. The inventory, filed on September 9, 2013, at paragraph 31, lists Eddie Abraham as having a 50 percent interest in *"two parcels of commercial real estate and cash reported for income tax purposes as Malooly-Abraham Joint Venture."* The inventory goes on to describe certain properties for the purposes of this suit as, the "McCombs Property" (and further described as Parcel 1 and Parcel 2, below); and the "McRae Property" (and further described as the "Sims/McRae Property" and "Sun Valley/McRae Property").

The inventory disclosure by WestStar bank matched what Eddie Abraham had repeatedly represented to Malooly Intervenors Geraldine and Gilbert Malooly, *i.e.* that he owned a one-half interest in these commercial properties. Such representation, first by Eddie Abraham, and then by WestStar Bank, was false, and such false and misleading misrepresentations were made over a number of years, and continued by WestStar Bank.

Parcel 2 of the McCombs property was held since July of 1969 by Joseph Abraham Sr. and Gilbert Malooly; each owning a 50 percent undivided interest. **There is no recorded deed from the Joseph Abraham Sr. Estate to Sib Abraham**; nonetheless, Sib Abraham purported to

5

convey a 25 percent interest to Eddie Abraham in July of 1989. The four heirs under the Joseph Abraham, Sr. Estate, (including Plaintiffs' mother) actually have a 25 percent interest in the Joseph Abraham interest, or 12.5 percent of the McCombs Parcel 2 property. Eddie Abraham only had a 25 percent interest (his 12.5 percent and the purported transfer of Sib Abraham's 12.5 percent interest to Eddie Abraham). The Chagra children own the remaining 12.5 interest by virtue of their Mother's passing and Grandfather's estate.

Consistent with the representation of WestStar Bank, presumably after the review of the records of Eddie Abraham including the accounting of receipts for the commercial activity on the McCombs property and his tax treatment of those receipts, Gilbert Malooly accepted and reasonably relied upon Eddie Abraham's representation that he had acquired the Joseph Abraham Sr. full 50 percent interest in the property. Accordingly, based on such continuing representations over a number of years, Gilbert Malooly caused payments in the amount of $271,053.96 to be paid to Eddie Abraham out of the commercial revenues from this property, representing the full 50 percent interest. These payments commenced in 1998 and continued through the management of the estate by WestStar Bank. Because of the continuing representations by Eddie Abraham, Gilbert Malooly had no reason to know that his wife, Geraldine, owned an interest in these proceeds or that the Plaintiffs had a beneficial interest in the payments made to Eddie Abraham as trustee of their interests.

Joseph Abraham, Sr. and Gilbert Malooly, Sr. each acquired a 50 percent undivided interest in the Sims/McRae property in 1973. There is no recorded deed from the Joseph Abraham Sr. Estate to Sib Abraham, or to Eddie Abraham. Nonetheless, Sib Abraham purported to convey to Eddie Abraham in 1989 a 25 percent interest to Eddie Abraham. This conveyance was fraudulent; Eddie Abraham did not own a full 25 percent interest, but rather, a

6

12.5 percent interest as one of the four heirs of Joseph Abraham *to his 50 percent interest*. Eddie Abraham made Gilbert Malooly aware of this conveyance, but concealed its falsity and also concealed the fact that Geraldine Malooly and the Plaintiffs each had a 25 percent interest in Joseph Abraham's 50 percent undivided interest (or 12.5 percent of the McRae property).

Again, in reasonable reliance on the representations of Eddie Abraham to him, Gilbert Malooly, Sr. made payments from the McRae Center commercial lease revenues from 1998 through 2014 of $583,700.00 to Eddie Abraham.

Gilbert Malooly, Sr. caused monthly payments to be made to Eddie Abraham from these two commercial properties commencing in 1998. Gilbert Malooly caused yearly tax reports to be filed of the interests and provided accounting to Eddie Abraham of the income and expenses for the properties. Eddie Abraham never corrected Gilbert Malooly or any other person, or any records, about Eddie's true interests in the properties and the interests of Geraldine Malooly and the Plaintiffs. Due to the continuing fraud and misrepresentations by Eddie Abraham and then the administrator of his estate, Gilbert Malooly was placed in the extraordinary position of making payments to Eddie Abraham, relying on his administration of the estate of Joseph Abraham Sr., when a portion of each payment from 1998 through the date of Eddie Abraham's death was due to Plaintiffs, his nephew and nieces, and to his wife, arising out of their inheritance interests from the Joseph Abraham, Sr. Estate.

The conduct of Eddie Abraham in defrauding Plaintiffs, his brother-in-law Gilbert Malooly, Sr. and Eddie's sister, Geraldine Malooly, and in converting their inheritance, was extreme and shocking to the conscience. To perpetrate his conversion and fraudulent scheme, Eddie Abraham violated his oath to the Probate Court where his father's estate was filed. Eddie Abraham made misrepresentations every time he received a monthly draw or inquired about the

7

leases, income and expenses of the properties. Eddie Abraham had hundreds of opportunities, while communicating with his staff, accounting and bookkeeping services, and family members, to correct or rectify the information about his true ownership interests in properties, but instead chose to continue his campaign of concealment and self-dealing. As a result, Eddie Abraham made hundreds of fraudulent representations in the course of this 16-year scheme. Such conduct continues the multi-year scheme to defraud Eddie Abraham's family members, conceal such fraud and breach of fiduciary duties, and engage in self-dealing to the detriment of Malooly Intervenors as well as other family members. Such continuing scheme included misrepresentations not only to Plaintiffs and Malooly Intervenors, but also to several other members of the family, accountants, and bookkeepers.

Commencing in or around early October, 2014, Gilbert Malooly entered into negotiations with Defendant to purchase the Estate's interest in the McRae and McCombs properties. On October 23, 2014, the parties entered into several contracts to purchase these interests. They were the "McRae Contract" to purchase the 50 percent undivided interest in properties located at 9627 Sims Drive (the "Sims Property") and in the 5800 block of Sun Valley Drive (the "Sun Valley Property"); and the "McCombs Contract" to purchase a 50 percent undivided interest in properties located at 10300-10310 McCombs (the "McCombs Properties").

On or about November 5, 2014, but in no event prior to the receipt of a title commitment in anticipation of a closing of the two sales, Gilbert Malooly, and then Plaintiffs, learned that there were not recorded warranty deeds from Joseph Abraham Sr. to Eddie Abraham to support Eddie Abraham's claimed interest in these properties. As a result of title and other records research, Malooly Intervenors, and then Plaintiffs, finally discovered that the Plaintiffs and Geraldine Malooly had been entitled to an interest in the properties from the date of Joseph

8

Abraham Sr.'s death to the present. At that time Malooly Intervenors and Plaintiffs also discovered that Eddie Abraham had converted those interests through fraud and misrepresentation.

## C. IF MALOOLY INTERVENORS ARE SUCCESSFUL THE STATUTORY CAP ON EXEMPLARY DAMAGES WOULD NOT APPLY.

As shown in *Intervenors' Third Amended Petition in Intervention,* Malooly Intervenors have pleaded that decedent Edward Abraham (among other things) breached his fiduciary duties, converted Malooly Intervenors' property, violated the Texas Trust Code, committed fraud and misrepresentation, breached contracts, received and held money that belonged to the Malooly Intervenors, engaged in a civil conspiracy, violated the Texas Penal Code and the Texas Theft Liability Act, and civilly aided and abetted his brother in committing tortious and criminal conduct. The Malooly Intervenors' damages are significant as a result of decedent's acts and omission and include (among others) monetary damages of not less than $600,000.00 and not more than $8,000,000.00[1]; forfeiture of all fees collected by decedent; disgorgement of all profits obtained by decedent; court costs; reasonable and necessary attorney's fees; pre- and post-judgment interest at the highest rates allowed by law; and <u>exemplary damages</u> pursuant to Texas Civil Practice and Remedies Code §41.003.

To be sure, if Plaintiffs and Malooly Intervenors are successful at a trial of this matter, and if they are successful in recovering exemplary damages, it is entirely plausible that the jury could compensate the Plaintiffs and Malooly Intervenors the entire amount of the estate's value because the limitation of recovery set forth in Tex. Civ. Prac. & Rem. Code §41.008, *i.e. the cap,* <u>**would not**</u> apply. Simply put, because Plaintiffs' and Malooly Intervenors' claims involve certain felonies, including misapplication of fiduciary property; securing execution of document

---

[1] The Court denied Defendant's Special Exceptions regarding the maximum amount of damages sought by Intervenors.' *See Attached Exhibit 1.*

9

by deception; fraudulent destruction, removal, or concealment of writing; and/or theft, the exemplary damages cap would not apply. *See* Tex. Civ. Prac. & Rem. Code § 41.008(c):

> (c) This section does not apply to a cause of action against a defendant from whom a plaintiff seeks recovery of exemplary damages based on conduct described as a felony in the following sections of the Penal Code if, except for Sections 49.07 and 49.08, the conduct was committed knowingly or intentionally:
>
> (10) Section 32.45[2] (misapplication of fiduciary property or property of financial institution);
> (11) Section 32.46[3] (securing execution of document by deception);
> (12) Section 32.47[4] (fraudulent destruction, removal, or concealment of writing);
> (13) Chapter 31[5] (theft) the punishment level for which is a felony of the third degree or higher....

*Id.*

Section 41.003 of the Texas Civil Practice and Remedies Code provides in relevant part that exemplary damages may be awarded in cases where, as here, a claimant proves by clear and convincing evidence that the harm as to which recovery of such damages is sought results from fraud or malice. *Swinnea v. ERI Consulting Engineers, Inc.*, 364 S.W.3d 421, 424 (Tex. App.— Tyler, 2012, pet. denied); Tex. Civ. Prac. & Rem. Code § 41.003(a)(1)-(2) (West Supp.2011). Under Section 41.008(b) of the Texas Civil Practice and Remedies Code, exemplary damages awarded against a defendant may not exceed an amount equal to the greater of (1) two times the amount of economic damages, plus an amount equal to any noneconomic damages found by the factfinder, not to exceed $750,000.00; or (2) $200,000.00. Tex. Civ. Prac. & Rem. Code § 41.008(b). This section requiring a cap on exemplary damages does not apply if the plaintiff seeks recovery of exemplary damages based on certain enumerated acts committed intentionally or knowingly, including securing execution of a document by deception. *Id.* § 41.008(c)(11).

---

[2] *See Attached Exhibit 2.*
[3] *See Attached Exhibit 3.*
[4] *See Attached Exhibit 4.*
[5] *See Attached Exhibit 5.*

10

This exception to the damages cap refers to Section 32.46 of the Texas Penal Code, which provides that a person commits an offense if, with intent to defraud or harm any person, he, by deception, causes another to sign or execute any document affecting property or service or the pecuniary interest of any person. *Id.* § 41.008(c)(11); Tex. Penal Code Ann. § 32.46(a)(1) (West Supp.2011). *See also Madison v. Williamson*, 241 S.W.3d 145, 161 (Tex. App.—Houston [1st Dist.] 2007, pet. denied)("*Before a court will apply the exception to the statutory damage caps in section 41.008(c), a plaintiff must obtain jury findings that the defendant violated one of the criminal code provisions listed in the statute, and that the violation was committed knowingly or intentionally.*").

Because Malooly Intervenors' claims involve a substantial amount of actual damages and uncapped exemplary damages, which resulted from decedent's acts, omissions, and felony conduct, it would be prejudicial to distribute any amount of the decedent's estate as a "partial inheritance" prior to the jury deciding this case. Defendant's application should be in all things denied.

**D.    ALTERNATIVELY, THE COURT SHOULD REQUIRE THE EL PASO COMMUNITY FOUNDATION TO POST AN ADEQUATE BOND TO PROTECT MALOOLY INTERVENORS' CLAIMS.**

Alternatively, and without waiving the foregoing, to the extent the El Paso Community Foundation seeks a partial inheritance of any amount, the Court can and should require the Foundation to post an adequate bond, in the amount of the distribution, that preserves and protects the Malooly Intervenors' rights and claims in the event any potential jury verdict exceeds the Estate's assets.

Additionally, in his Application for Partial Inheritance Distribution, Defendant asserts that "the Court previously states that the Court would not entertain claims going back 25 to 30

11

years, against the Decedent, and has limited discovery in this suit to six (6) years before the Decedent's Death: April 17th, 2006." However, Defendant fails to disclose that the Court's has not ruled on the scope or duration of any of the claims asserted by Malooly Intervenors, or the scope of their discovery. Accordingly, Defendant's statement is erroneous as applied to the Malooly Intevenors.

WHEREFORE, PREMISES CONSIDERED, the Malooly Intervenors respectfully pray that this Court deny the Successor Dependent Administrator's application for a partial distribution in its entirety. Alternatively, the Court should require the El Paso Community Foundation to post an adequate security bond, as described above, to preserve and protect the Malooly Intervenors' rights and claims in the decedent's estate. The Malooly Intervenors also request such other and further relief, general and special, legal and equitable, to which they may be justly entitled.

Respectfully submitted,

DYKEMA COX SMITH
221 N. Kansas St. Suite 2000
El Paso, Texas 79901
915-541-9300
915-541-9399 Facsimile

By:    /s/ Mark C. Walker
Mark C. Walker
State Bar No. 20717320
mwalker@dykema.com
Mario Franke
State Bar No. 24074225
mfranke@dykema.com

And

Thomas E. Stanton
Attorney at Law
520 Texas Avenue
915-532-1122

12

877-434-6917 Facsimile

By:     /s/ Thomas E. Stanton
        Thomas E. Stanton
        Texas State Bar No. 19055450
        tom@stantonlaw.com

        **Attorneys for Malooly Intervenors**

## CERTIFICATE OF SERVICE

In compliance with Texas Rule of Civil Procedure 21a(e), I, Mark C. Walker, certify that on this 28th day of March, 2017, a true and correct copy of the foregoing document filed electronically with the clerk of the court in accordance with Texas Rule of Civil Procedure 21a(a)(1), or if the email address of the party or attorney is not on file with the electronic filing manager then service is accomplished pursuant to Texas Rule of Civil Procedure 21a(a)(2).

Mr. Jerome M. Karam
Law Office of Jerome M. Karam
308 W. Parkwood, Suite 104A
Friendswood, Texas 77546
**Attorney for 3rd Party Defendant**

Mr. Sam Legate                          Mr. Darron Powell
Scherr Legate, PLLC                     1517 Campbell
109 N. Oregon St., 12th Floor           El Paso, Texas 79902
El Paso, Texas 79901                    **Attorney for Defendant**
**Attorney for Plaintiffs**

                                /s/ Mark C. Walker
                                MARK C. WALKER

13

# EXHIBIT 1

## Order Denying Defendant's Special Exceptions





## IN THE STATUTORY PROBATE COURT NUMBER TWO
### EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER, | § | |
| | § | |
| Plaintiffs/Counter-Claim Defendants, | § | |
| | § | |
| vs. | § | |
| | § | |
| JAMES KIRBY READ, SUCCESSOR PERMANENT DEPENDENT ADMINISTRATOR WITH WILL ANNEXED AND CODICIL ANNEXED OF THE ESTATE OF EDWARD ABRAHAM, DECEASED, | § | Cause No. 2012-CPR03934 |
| | § | |
| Defendant/Counter-Claim Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| LESLIE C. KARAM, Individually, | § | |
| | § | |
| Counter-Claim Defendant. And | § | |
| | § | |
| GILBERT MALOOLY, on his behalf And on behalf of the Malooly Family, | § | |
| | § | |
| Intervenors. | § | |

## ORDER

On this day, having reviewed the documents that were submitted to the Court, the Court finds that James Kirby Read, Successor Permanent Dependent Administrator with Will Annexed and Codicil for the Estate of Edward Abraham ("Deceased")'s Special Exceptions to Plaintiffs' Second Amended Original Petition in Intervention, should be denied.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that James Kirby Read, Successor Permanent Dependent Administrator with Will Annexed and Codicil for the Estate of Edward Abraham ("Deceased")'s Special Exceptions to Plaintiffs' Second Amended Original Petition in Intervention is hereby DENIED.

SIGNED on September 20, 2016.

JUDGE PRESIDING

# EXHIBIT 2
## Penal Code Section 32.45

*Tex. Penal Code § 32.45*

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis®.* > *Penal Code* > *Title 7 Offenses Against Property* > *Chapter 32 Fraud* > *Subchapter D Other Deceptive Practices*

## Sec. 32.45. Misapplication of Fiduciary Property or Property of Financial Institution.

(a) For purposes of this section:

    (1) "Fiduciary" includes:

        (A) a trustee, guardian, administrator, executor, conservator, and receiver;

        (B) an attorney in fact or agent appointed under a durable power of attorney as provided by Chapter XII, Texas Probate Code;

        (C) any other person acting in a fiduciary capacity, but not a commercial bailee unless the commercial bailee is a party in a motor fuel sales agreement with a distributor or supplier, as those terms are defined by *Section 162.001, Tax Code*; and

        (D) an officer, manager, employee, or agent carrying on fiduciary functions on behalf of a fiduciary.

    (2) "Misapply" means deal with property contrary to:

        (A) an agreement under which the fiduciary holds the property; or

        (B) a law prescribing the custody or disposition of the property.

(b) A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

(c) An offense under this section is:

    (1) a Class C misdemeanor if the value of the property misapplied is less than $100;

    (2) a Class B misdemeanor if the value of the property misapplied is $100 or more but less than $750;

    (3) a Class A misdemeanor if the value of the property misapplied is $750 or more but less than $2,500;

    (4) a state jail felony if the value of the property misapplied is $2,500 or more but less than $30,000;

    (5) a felony of the third degree if the value of the property misapplied is $30,000 or more but less than $150,000;

    (6) a felony of the second degree if the value of the property misapplied is $150,000 or more but less than $300,000; or

    (7) a felony of the first degree if the value of the property misapplied is $300,000 or more.

(d) An offense described for purposes of punishment by Subsections (c)(1)—(6) is increased to the next higher category of offense if it is shown on the trial of the offense that the offense was committed against an elderly individual as defined by Section 22.04.

(e) With the consent of the appropriate local county or district attorney, the attorney general has concurrent jurisdiction with that consenting local prosecutor to prosecute an offense under this section that involves the state Medicaid program.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1991, 72nd Leg., ch. 565 (S.B. 4), § 2, effective September 1, 1991; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § 1.01, effective September 1, 1994; am. Acts 1997, 75th Leg., ch. 1036 (S.B. 665), § 14, effective September 1, 1997; am. Acts 2001, 77th Leg., ch. 1047 (H.B. 1813), § 1, effective September 1, 2001; am. Acts 2003, 78th Leg., ch. 198 (H.B. 2292), § 2.137, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 257 (H.B. 1743), § 14, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 432 (H.B. 420), § 3, effective September 1, 2003; am. Acts 2005, 79th Leg., ch. 728 (H.B. 2018), § 23.001(77), effective September 1, 2005; am. Acts 2013, 83rd Leg., ch. 128 (S.B. 821), § 5, effective September 1, 2013; am. Acts 2015, 84th Leg., ch. 1251 (H.B. 1396), § 21, effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

# EXHIBIT 3
## Penal Code Section 32.46

## Tex. Penal Code § 32.46

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis®* > *Penal Code* > *Title 7 Offenses Against Property* > *Chapter 32 Fraud* > *Subchapter D Other Deceptive Practices*

## Sec. 32.46. Securing Execution of Document by Deception.

(a) A person commits an offense if, with intent to defraud or harm any person, he, by deception:

   (1) causes another to sign or execute any document affecting property or service or the pecuniary interest of any person; or

   (2) causes or induces a public servant to file or record any purported judgment or other document purporting to memorialize or evidence an act, an order, a directive, or process of:

      (A) a purported court that is not expressly created or established under the constitution or the laws of this state or of the United States;

      (B) a purported judicial entity that is not expressly created or established under the constitution or laws of this state or of the United States; or

      (C) a purported judicial officer of a purported court or purported judicial entity described by Paragraph (A) or (B).

(b) An offense under Subsection (a)(1) is a:

   (1) Class C misdemeanor if the value of the property, service, or pecuniary interest is less than $100;

   (2) Class B misdemeanor if the value of the property, service, or pecuniary interest is $100 or more but less than $750;

   (3) Class A misdemeanor if the value of the property, service, or pecuniary interest is $750 or more but less than $2,500;

   (4) state jail felony if the value of the property, service, or pecuniary interest is $2,500 or more but less than $30,000;

   (5) felony of the third degree if the value of the property, service, or pecuniary interest is $30,000 or more but less than $150,000;

   (6) felony of the second degree if the value of the property, service, or pecuniary interest is $150,000 or more but less than $300,000; or

   (7) felony of the first degree if the value of the property, service, or pecuniary interest is $300,000 or more.

(c) An offense under Subsection (a)(2) is a state jail felony.

(c-1) An offense described for purposes of punishment by Subsections (b)(1)—(6) and (c) is increased to the next higher category of offense if it is shown on the trial of the offense that the offense was committed against an elderly individual as defined by Section 22.04 or involves the state Medicaid program.

(d) In this section:

   (1) "Deception" has the meaning assigned by Section 31.01.

(2) "Document" includes electronically stored data or other information that is retrievable in a readable, perceivable form.

(e) With the consent of the appropriate local county or district attorney, the attorney general has concurrent jurisdiction with that consenting local prosecutor to prosecute an offense under this section that involves the state Medicaid program.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § 1.01, effective September 1, 1994; am. Acts 1997, 75th Leg., ch. 189 (H.B. 1185), § 2, effective May 21, 1997; am. Acts 2003, 78th Leg., ch. 198 (H.B. 2292), § 2.138, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 257 (H.B. 1743), § 15, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 432 (H.B. 420), § 4, effective September 1, 2003; am. Acts 2007, 80th Leg., ch. 127 (S.B. 1694), § 4, effective September 1, 2007; am. Acts 2011, 82nd Leg., ch. 620 (S.B. 688), § 6, effective September 1, 2011; am. Acts 2015, 84th Leg., ch. 1251 (H.B. 1396), § 22, effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

# EXHIBIT 4
# Penal Code Section 32.47

## Tex. Penal Code § 32.47

This document is current through the 2015 regular session, 84th Legislature.

## Sec. 32.47. Fraudulent Destruction, Removal, or Concealment of Writing.

(a) A person commits an offense if, with intent to defraud or harm another, he destroys, removes, conceals, alters, substitutes, or otherwise impairs the verity, legibility, or availability of a writing, other than a governmental record.

(b) For purposes of this section, "writing" includes:

   (1) printing or any other method of recording information;

   (2) money, coins, tokens, stamps, seals, credit cards, badges, trademarks;

   (3) symbols of value, right, privilege, or identification; and

   (4) universal product codes, labels, price tags, or markings on goods.

(c) Except as provided in Subsection (d), an offense under this section is a Class A misdemeanor.

(d) An offense under this section is a state jail felony if the writing:

   (1) is a will or codicil of another, whether or not the maker is alive or dead and whether or not it has been admitted to probate; or

   (2) is a deed, mortgage, deed of trust, security instrument, security agreement, or other writing for which the law provides public recording or filing, whether or not the writing has been acknowledged.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § *1.01*, effective September 1, 1994; am. Acts 2001, 77th Leg., ch. 21 (S.B. 923), § *1*, effective September 1, 2001.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

# EXHIBIT 5

# Penal Code – Chapter 31: Theft

# Tex. Penal Code § 31.01

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft*

## Sec. 31.01. Definitions.

In this chapter:

(1) "Deception" means:

    (A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

    (B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

    (C) preventing another from acquiring information likely to affect his judgment in the transaction;

    (D) selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record; or

    (E) promising performance that is likely to affect the judgment of another in the transaction and that the actor does not intend to perform or knows will not be performed, except that failure to perform the promise in issue without other evidence of intent or knowledge is not sufficient proof that the actor did not intend to perform or know the promise would not be performed.

(2) "Deprive" means:

    (A) to withhold property from the owner permanently or for so extended a period of time that a major portion of the value or enjoyment of the property is lost to the owner;

    (B) to restore property only upon payment of reward or other compensation; or

    (C) to dispose of property in a manner that makes recovery of the property by the owner unlikely.

(3) "Effective consent" includes consent by a person legally authorized to act for the owner. Consent is not effective if:

    (A) induced by deception or coercion;

    (B) given by a person the actor knows is not legally authorized to act for the owner;

    (C) given by a person who by reason of youth, mental disease or defect, or intoxication is known by the actor to be unable to make reasonable property dispositions;

    (D) given solely to detect the commission of an offense; or

    (E) given by a person who by reason of advanced age is known by the actor to have a diminished capacity to make informed and rational decisions about the reasonable disposition of property.

(4) "Appropriate" means:

    (A) to bring about a transfer or purported transfer of title to or other nonpossessory interest in property, whether to the actor or another; or

(B) to acquire or otherwise exercise control over property other than real property.

(5) "Property" means:

(A) real property;

(B) tangible or intangible personal property including anything severed from land; or

(C) a document, including money, that represents or embodies anything of value.

(6) "Service" includes:

(A) labor and professional service;

(B) telecommunication, public utility, or transportation service;

(C) lodging, restaurant service, and entertainment; and

(D) the supply of a motor vehicle or other property for use.

(7) "Steal" means to acquire property or service by theft.

(8) "Certificate of title" has the meaning assigned by _Section 501.002, Transportation Code_.

(9) "Used or secondhand motor vehicle" means a used motor vehicle, as that term is defined by _Section 501.002, Transportation Code_.

(10) "Elderly individual" has the meaning assigned by Section 22.04(c).

(11) "Retail merchandise" means one or more items of tangible personal property displayed, held, stored, or offered for sale in a retail establishment.

(12) "Retail theft detector" means an electrical, mechanical, electronic, or magnetic device used to prevent or detect shoplifting and includes any article or component part essential to the proper operation of the device.

(13) "Shielding or deactivation instrument" means any item or tool designed, made, or adapted for the purpose of preventing the detection of stolen merchandise by a retail theft detector. The term includes a metal-lined or foil-lined shopping bag and any item used to remove a security tag affixed to retail merchandise.

(14) "Fire exit alarm" has the meaning assigned by _Section 793.001, Health and Safety Code_.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974Acts 1975, 64th Leg., ch. 342 (S.B. 127), § 9, effective September 1, 1975; am. Acts 1985, 69th Leg., ch. 901 (H.B. 1365), § 2, effective September 1, 1985; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § _1.01_, effective September 1, 1994; am. Acts 1997, 75th Leg., ch. 165 (S.B. 898), § _30.237_, effective September 1, 1997; am. Acts 2003, 78th Leg., ch. 432 (H.B. 420), § _1_, effective September 1, 2003; am. Acts 2011, 82nd Leg., ch. 323 (H.B. 2482), § _1_, effective September 1, 2011.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

## Tex. Penal Code § 31.02

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis®* > *Penal Code* > *Title 7 Offenses Against Property* > *Chapter 31 Theft*

## Sec. 31.02. Consolidation of Theft Offenses.

Theft as defined in Section 31.03 constitutes a single offense superseding the separate offenses previously known as theft, theft by false pretext, conversion by a bailee, theft from the person, shoplifting, acquisition of property by threat, swindling, swindling by worthless check, embezzlement, extortion, receiving or concealing embezzled property, and receiving or concealing stolen property.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § *1.01*, effective September 1, 1994.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.03, Part 1 of 2

This document is current through the 2015 regular session, 84th Legislature.

Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft

## Sec. 31.03. Theft.

(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

(b) Appropriation of property is unlawful if:

(1) it is without the owner's effective consent;

(2) the property is stolen and the actor appropriates the property knowing it was stolen by another; or

(3) property in the custody of any law enforcement agency was explicitly represented by any law enforcement agent to the actor as being stolen and the actor appropriates the property believing it was stolen by another.

(c) For purposes of Subsection (b):

(1) evidence that the actor has previously participated in recent transactions other than, but similar to, that which the prosecution is based is admissible for the purpose of showing knowledge or intent and the issues of knowledge or intent are raised by the actor's plea of not guilty;

(2) the testimony of an accomplice shall be corroborated by proof that tends to connect the actor to the crime, but the actor's knowledge or intent may be established by the uncorroborated testimony of the accomplice;

(3) an actor engaged in the business of buying and selling used or secondhand personal property, or lending money on the security of personal property deposited with the actor, is presumed to know upon receipt by the actor of stolen property (other than a motor vehicle subject to Chapter 501, Transportation Code) that the property has been previously stolen from another if the actor pays for or loans against the property $25 or more (or consideration of equivalent value) and the actor knowingly or recklessly:

(A) fails to record the name, address, and physical description or identification number of the seller or pledgor;

(B) fails to record a complete description of the property, including the serial number, if reasonably available, or other identifying characteristics; or

(C) fails to obtain a signed warranty from the seller or pledgor that the seller or pledgor has the right to possess the property. It is the express intent of this provision that the presumption arises unless the actor complies with each of the numbered requirements;

(4) for the purposes of Subdivision (3)(A), "identification number" means driver's license number, military identification number, identification certificate, or other official number capable of identifying an individual;

(5) stolen property does not lose its character as stolen when recovered by any law enforcement agency;

(6) an actor engaged in the business of obtaining abandoned or wrecked motor vehicles or parts of an abandoned or wrecked motor vehicle for resale, disposal, scrap, repair, rebuilding, demolition, or other form of salvage is presumed to know on receipt by the actor of stolen property that the property has been previously stolen from another if the actor knowingly or recklessly:

(A) fails to maintain an accurate and legible inventory of each motor vehicle component part purchased by or delivered to the actor, including the date of purchase or delivery, the name, age, address, sex, and driver's license number of the seller or person making the delivery, the license plate number of the motor vehicle in which the part was delivered, a complete description of the part, and the vehicle identification number of the motor vehicle from which the part was removed, or in lieu of maintaining an inventory, fails to record the name and certificate of inventory number of the person who dismantled the motor vehicle from which the part was obtained;

(B) fails on receipt of a motor vehicle to obtain a certificate of authority, sales receipt, or transfer document as required by Chapter 683, Transportation Code, or a certificate of title showing that the motor vehicle is not subject to a lien or that all recorded liens on the motor vehicle have been released; or

(C) fails on receipt of a motor vehicle to immediately remove an unexpired license plate from the motor vehicle, to keep the plate in a secure and locked place, or to maintain an inventory, on forms provided by the Texas Department of Motor Vehicles, of license plates kept under this paragraph, including for each plate or set of plates the license plate number and the make, motor number, and vehicle identification number of the motor vehicle from which the plate was removed;

(7) an actor who purchases or receives a used or secondhand motor vehicle is presumed to know on receipt by the actor of the motor vehicle that the motor vehicle has been previously stolen from another if the actor knowingly or recklessly:

(A) fails to report to the Texas Department of Motor Vehicles the failure of the person who sold or delivered the motor vehicle to the actor to deliver to the actor a properly executed certificate of title to the motor vehicle at the time the motor vehicle was delivered; or

(B) fails to file with the county tax assessor-collector of the county in which the actor received the motor vehicle, not later than the 20th day after the date the actor received the motor vehicle, the registration license receipt and certificate of title or evidence of title delivered to the actor in accordance with Subchapter D, Chapter 520, Transportation Code, at the time the motor vehicle was delivered;

(8) an actor who purchases or receives from any source other than a licensed retailer or distributor of pesticides a restricted-use pesticide or a state-limited-use pesticide or a compound, mixture, or preparation containing a restricted-use or state-limited-use pesticide is presumed to know on receipt by the actor of the pesticide or compound, mixture, or preparation that the pesticide or compound, mixture, or preparation has been previously stolen from another if the actor:

(A) fails to record the name, address, and physical description of the seller or pledgor;

(B) fails to record a complete description of the amount and type of pesticide or compound, mixture, or preparation purchased or received; and

(C) fails to obtain a signed warranty from the seller or pledgor that the seller or pledgor has the right to possess the property; and

(9) an actor who is subject to Section 409, Packers and Stockyards Act (7 U.S.C. Section 228b), that obtains livestock from a commission merchant by representing that the actor will make prompt payment is presumed to have induced the commission merchant's consent by deception if the actor fails to make full payment in accordance with Section 409, Packers and Stockyards Act (7 U.S.C. Section 228b).

(d) It is not a defense to prosecution under this section that:

(1) the offense occurred as a result of a deception or strategy on the part of a law enforcement agency, including the use of an undercover operative or peace officer;

(2) the actor was provided by a law enforcement agency with a facility in which to commit the offense or an opportunity to engage in conduct constituting the offense; or

(3) the actor was solicited to commit the offense by a peace officer, and the solicitation was of a type that would encourage a person predisposed to commit the offense to actually commit the offense, but would not encourage a person not predisposed to commit the offense to actually commit the offense.

(e) Except as provided by Subsection (f), an offense under this section is:

(1) a Class C misdemeanor if the value of the property stolen is less than $100;

(2) a Class B misdemeanor if:

(A) the value of the property stolen is $100 or more but less than $750;

(B) the value of the property stolen is less than $100 and the defendant has previously been convicted of any grade of theft; or

(C) the property stolen is a driver's license, commercial driver's license, or personal identification certificate issued by this state or another state;

(3) a Class A misdemeanor if the value of the property stolen is $750 or more but less than $2,500;

(4) a state jail felony if:

(A) the value of the property stolen is $2,500 or more but less than $30,000, or the property is less than 10 head of sheep, swine, or goats or any part thereof under the value of $30,000;

(B) regardless of value, the property is stolen from the person of another or from a human corpse or grave, including property that is a military grave marker;

(C) the property stolen is a firearm, as defined by Section 46.01;

(D) the value of the property stolen is less than $2,500 and the defendant has been previously convicted two or more times of any grade of theft;

(E) the property stolen is an official ballot or official carrier envelope for an election; or

(F) the value of the property stolen is less than $20,000 and the property stolen is:

(i) aluminum;

(ii) bronze;

(iii) copper; or

(iv) brass;

(5) a felony of the third degree if the value of the property stolen is $30,000 or more but less than $150,000, or the property is:

(A) cattle, horses, or exotic livestock or exotic fowl as defined by Section 142.001, Agriculture Code, stolen during a single transaction and having an aggregate value of less than $150,000; or

(B) 10 or more head of sheep, swine, or goats stolen during a single transaction and having an aggregate value of less than $150,000;

(6) a felony of the second degree if:

(A) the value of the property stolen is $150,000 or more but less than $300,000; or

(B) the value of the property stolen is less than $300,000 and the property stolen is an automated teller machine or the contents or components of an automated teller machine; or

(7) a felony of the first degree if the value of the property stolen is $300,000 or more.

(f) An offense described for purposes of punishment by Subsections (e)(1)—(6) is increased to the next higher category of offense if it is shown on the trial of the offense that:

(1) the actor was a public servant at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of his status as a public servant;

(2) the actor was in a contractual relationship with government at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of the contractual relationship;

(3) the owner of the property appropriated was at the time of the offense:

(A) an elderly individual; or

(B) a nonprofit organization;

(4) the actor was a Medicare provider in a contractual relationship with the federal government at the time of the offense and the property appropriated came into the actor's custody, possession, or control by virtue of the contractual relationship; or

(5) during the commission of the offense, the actor intentionally, knowingly, or recklessly:

(A) caused a fire exit alarm to sound or otherwise become activated;

(B) deactivated or otherwise prevented a fire exit alarm or retail theft detector from sounding; or

(C) used a shielding or deactivation instrument to prevent or attempt to prevent detection of the offense by a retail theft detector.

(g) For the purposes of Subsection (a), a person is the owner of exotic livestock or exotic fowl as defined by Section 142.001, Agriculture Code, only if the person qualifies to claim the animal under Section 142.0021, Agriculture Code, if the animal is an estray.

(h) In this section:

(1) "Restricted-use pesticide" means a pesticide classified as a restricted-use pesticide by the administrator of the Environmental Protection Agency under 7 U.S.C. Section 136a, as that law existed on January 1, 1995, and containing an active ingredient listed in the federal regulations adopted under that law (40 C.F.R. Section 152.175) and in effect on that date.

(2) "State-limited-use pesticide" means a pesticide classified as a state-limited-use pesticide by the Department of Agriculture under Section 76.003, Agriculture Code, as that section existed on January 1, 1995, and containing an active ingredient listed in the rules adopted under that section (4 TAC Section 7.24) as that section existed on that date.

(3) "Nonprofit organization" means an organization that is exempt from federal income taxation under Section 501(a), Internal Revenue Code of 1986, by being described as an exempt organization by Section 501(c)(3) of that code.

(4) "Automated teller machine" means an unstaffed electronic information processing device that, at the request of a user, performs a financial transaction through the direct transmission of electronic impulses to a financial institution or through the recording of electronic impulses or other indicia of a transaction for delayed transmission to a financial institution. The term includes an automated banking machine.

(i) For purposes of Subsection (c)(9), "livestock" and "commission merchant" have the meanings assigned by Section 147.001, Agriculture Code.

(j) With the consent of the appropriate local county or district attorney, the attorney general has concurrent jurisdiction with that consenting local prosecutor to prosecute an offense under this section that involves the state Medicaid program.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1975, 64th Leg., ch. 342 (S.B. 127), § 10, effective September 1, 1975; am. Acts 1977, 65th Leg., ch. 349 (S.B. 310), § 1, effective August 29, 1977; am. Acts 1981, 67th Leg., ch. 298 (S.B. 372), § 1, effective September 1, 1981; am. Acts 1981, 67th Leg., ch. 455 (H.B. 1965), § 1, effective June 11, 1981; am. Acts 1983, 68th Leg., ch. 497 (S.B. 283), § 3, effective September 1, 1983; am. Acts 1983, 68th Leg., ch. 558 (S.B. 651), § 11, effective September 1, 1983; am. Acts 1983, 68th Leg., ch. 741 (H.B. 171), § 1, effective September 1, 1983; am. Acts 1985, 69th Leg., ch. 599 (S.B 30), § 1, effective September 1, 1985; am. Acts 1985, 69th Leg., ch. 901 (H.B. 1365), § 1, effective September 1, 1985; am. Acts 1987, 70th Leg., ch. 167 (S.B. 892), § *5.01(a)(45)*, effective September 1, 1987; am. Acts 1989, 71st Leg., ch. 245 (H.B. 524), § *1*, September 1, 1989; am. Acts 1989, 71st Leg., ch. 724 (S.B. 1814), §§ *2*, 3, effective September 1, 1989; am. *Acts 1991, 72nd Leg., ch. 14 (S.B. 404), § 284(80)*, effective September 1, 1991; am. Acts 1991, 72nd Leg., ch. 565 (S.B. 4), § *1*, effective September 1, 1991; am. Acts 1993, 73rd Leg., ch. 203 (H.B. 608), §§ *4*, 5, effective September 1, 1993; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § *1.01*, effective September 1, 1994; am. Acts 1995, 74th Leg., ch. 318 (S.B. 15), § *9*, effective September 1, 1995; am. Acts 1995, 74th Leg., ch. 734 (H.B. 1957), § *1*, effective September 1, 1995; am. Acts 1995, 74th Leg., ch. 843 (S.B. 676), § *1*, effective September 1, 1995; am. Acts 1997, 75th Leg., ch. 165 (S.B. 898), §§ *30.238*, 31.01(69), effective September 1, 1997; am. Acts 1997, 75th Leg., ch. 1153 (S.B. 30), § 7.01, effective September 1, 1997; am. Acts 2001, 77th. Leg., ch. 1276 (S.B. 1747), § 1, effective September 1, 2001; am. Acts 2003, 78th Leg., ch. 198 (H.B. 2292), § *2.136*, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 257 (H.B. 1743), § *13*, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 393 (H.B. 54), § *20*, effective September 1, 2003; am. Acts 2003, 78th Leg., ch. 432 (H.B. 420), § *2*, effective September 1, 2003; am. Acts 2007, 80th Leg., ch. 304 (H.B. 1766), § *1*, effective September 1, 2007; am. Acts 2009, 81st Leg., ch. 70 (H.B. 1282), § *1*, effective September 1, 2009; am. Acts 2009, 81st Leg., ch. 105 (H.B. 1466), § *1*, effective May 23, 2009; am. Acts 2009, 81st Leg., ch. 139 (S.B. 1163), § *1*, effective September 1, 2009; am. Acts 2009, 81st Leg., ch. 295 (H.B. 348), § *1*, effective September 1, 2009; am. Acts 2009, 81st Leg., ch. 903 (H.B. 671), §§ *1*, 2, effective September 1, 2009; am. Acts 2009, 81st Leg., ch. 933 (H.B. 3097), § *3J.01*, effective September 1, 2009; am. Acts 2011, 82nd Leg., ch. 120 (S.B. 687), §§ 1, 2, effective September 1, 2011; am. Acts 2011, 82nd Leg., ch. 323 (H.B. 2482), § *2*, effective September 1, 2011; am. Acts 2011, 82nd Leg., ch. 1234 (S.B. 694), § *21*, effective September 1, 2011; am. Acts 2015, 84th Leg., ch. 1251 (H.B. 1396), § 10, effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

Tex. Penal Code § 31.04

This document is current through the 2015 regular session, 84th Legislature.

Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft

## Sec. 31.04. Theft of Service.

(a) A person commits theft of service if, with intent to avoid payment for service that the actor knows is provided only for compensation:

    (1) the actor intentionally or knowingly secures performance of the service by deception, threat, or false token;

    (2) having control over the disposition of services of another to which the actor is not entitled, the actor intentionally or knowingly diverts the other's services to the actor's own benefit or to the benefit of another not entitled to the services;

    (3) having control of personal property under a written rental agreement, the actor holds the property beyond the expiration of the rental period without the effective consent of the owner of the property, thereby depriving the owner of the property of its use in further rentals; or

    (4) the actor intentionally or knowingly secures the performance of the service by agreeing to provide compensation and, after the service is rendered, fails to make full payment after receiving notice demanding payment.

(b) For purposes of this section, intent to avoid payment is presumed if:

    (1) the actor absconded without paying for the service or expressly refused to pay for the service in circumstances where payment is ordinarily made immediately upon rendering of the service, as in hotels, campgrounds, recreational vehicle parks, restaurants, and comparable establishments;

    (2) the actor failed to make payment under a service agreement within 10 days after receiving notice demanding payment;

    (3) the actor returns property held under a rental agreement after the expiration of the rental agreement and fails to pay the applicable rental charge for the property within 10 days after the date on which the actor received notice demanding payment; or

    (4) the actor failed to return the property held under a rental agreement:

        (A) within five days after receiving notice demanding return, if the property is valued at less than $2,500; or

        (B) within three days after receiving notice demanding return, if the property is valued at $2,500 or more.

(c) For purposes of Subsections (a)(4), (b)(2), and (b)(4), notice shall be notice in writing, sent by registered or certified mail with return receipt requested or by telegram with report of delivery requested, and addressed to the actor at his address shown on the rental agreement or service agreement.

(d) If written notice is given in accordance with Subsection (c), it is presumed that the notice was received no later than five days after it was sent.

(d-1)For purposes of Subsection (a)(4):

  (1) if the compensation is or was to be paid on a periodic basis, the intent to avoid payment for a service may be formed at any time during or before a pay period; and

  (2) the partial payment of wages alone is not sufficient evidence to negate the actor's intent to avoid payment for a service.

(e) An offense under this section is:

  (1) a Class C misdemeanor if the value of the service stolen is less than $100;

  (2) a Class B misdemeanor if the value of the service stolen is $100 or more but less than $750;

  (3) a Class A misdemeanor if the value of the service stolen is $750 or more but less than $2,500;

  (4) a state jail felony if the value of the service stolen is $2,500 or more but less than $30,000;

  (5) a felony of the third degree if the value of the service stolen is $30,000 or more but less than $150,000;

  (6) a felony of the second degree if the value of the service stolen is $150,000 or more but less than $300,000; or

  (7) a felony of the first degree if the value of the service stolen is $300,000 or more.

(f) Notwithstanding any other provision of this code, any police or other report of stolen vehicles by a political subdivision of this state shall include on the report any rental vehicles whose renters have been shown to such reporting agency to be in violation of Subsection (b)(2) and shall indicate that the renting agency has complied with the notice requirements demanding return as provided in this section.

(g) It is a defense to prosecution under this section that:

  (1) the defendant secured the performance of the service by giving a post-dated check or similar sight order to the person performing the service; and

  (2) the person performing the service or any other person presented the check or sight order for payment before the date on the check or sight order.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1977, 65th Leg., ch. 429 (S.B. 489), § 1, effective August 29, 1977; am. Acts 1983, 68th Leg., ch. 497 (S.B. 283), § 4, effective September 1, 1983; am. Acts 1991, 72nd Leg., ch. 565 (S.B. 4), § 15, effective September 1, 1991; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § 1.01, effective September 1, 1994; am. Acts 1995, 74th Leg., ch. 479 (S.B. 919), § 1, effective August 28, 1995; am. Acts 1999, 76th Leg., ch. 843 (H.B. 1798), § 1, effective September 1, 1999; am. Acts 2001, 77th Leg., ch. 1245 (S.B. 437), §§ 1, 2, effective September 1, 2001; am. Acts 2003, 78th Leg., ch. 419 (H.B. 275), § 1, effective September 1, 2003; am. Acts 2011, 82nd Leg., ch. 141 (S.B. 1024), § 1, effective September 1, 2011; am. Acts 2015, 84th Leg., ch. 1251 (H.B. 1396), § 11, effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

# Tex. Penal Code § 31.05

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis®* > *Penal Code* > *Title 7 Offenses Against Property* > *Chapter 31 Theft*

## Sec. 31.05. Theft of Trade Secrets.

(a) For purposes of this section:

   (1) "Article" means any object, material, device, or substance or any copy thereof, including a writing, recording, drawing, sample, specimen, prototype, model, photograph, microorganism, blueprint, or map.

   (2) "Copy" means a facsimile, replica, photograph, or other reproduction of an article or a note, drawing, or sketch made of or from an article.

   (3) "Representing" means describing, depicting, containing, constituting, reflecting, or recording.

   (4) "Trade secret" means the whole or any part of any scientific or technical information, design, process, procedure, formula, or improvement that has value and that the owner has taken measures to prevent from becoming available to persons other than those selected by the owner to have access for limited purposes.

(b) A person commits an offense if, without the owner's effective consent, he knowingly:

   (1) steals a trade secret;

   (2) makes a copy of an article representing a trade secret; or

   (3) communicates or transmits a trade secret.

(c) An offense under this section is a felony of the third degree.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § *1.01*, effective September 1, 1994.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

## Tex. Penal Code § 31.06

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis®* > *Penal Code* > *Title 7 Offenses Against Property* > *Chapter 31 Theft*

## Sec. 31.06. Presumption for Theft by Check or Similar Sight Order.

(a) If the actor obtained property or secured performance of service by issuing or passing a check or similar sight order for the payment of money, when the issuer did not have sufficient funds in or on deposit with the bank or other drawee for the payment in full of the check or order as well as all other checks or orders then outstanding, it is prima facie evidence of the issuer's intent to deprive the owner of property under Section 31.03 (Theft) including a drawee or third-party holder in due course who negotiated the check or order or to avoid payment for service under Section 31.04 (Theft of Service) (except in the case of a postdated check or order) if:

   (1) the issuer had no account with the bank or other drawee at the time the issuer issued the check or sight order; or

   (2) payment was refused by the bank or other drawee for lack of funds or insufficient funds, on presentation within 30 days after issue, and the issuer failed to pay the holder in full within 10 days after receiving notice of that refusal.

(b) For purposes of Subsection (a)(2) or (f)(3), notice may be actual notice or notice in writing that:

   (1) is sent by:

      (A) first class mail, evidenced by an affidavit of service; or

      (B) registered or certified mail with return receipt requested;

   (2) is addressed to the issuer at the issuer's address shown on:

      (A) the check or order;

      (B) the records of the bank or other drawee; or

      (C) the records of the person to whom the check or order has been issued or passed; and

   (3) contains the following statement:

   (3) "This is a demand for payment in full for a check or order not paid because of a lack of funds or insufficient funds. If you fail to make payment in full within 10 days after the date of receipt of this notice, the failure to pay creates a presumption for committing an offense, and this matter may be referred for criminal prosecution."

(c) If written notice is given in accordance with Subsection (b), it is presumed that the notice was received no later than five days after it was sent.

(d) Nothing in this section prevents the prosecution from establishing the requisite intent by direct evidence.

(e) Partial restitution does not preclude the presumption of the requisite intent under this section.

(f) If the actor obtained property by issuing or passing a check or similar sight order for the payment of money, the actor's intent to deprive the owner of the property under Section 31.03 (Theft) is presumed, except in the case of a postdated check or order, if:

   (1) the actor ordered the bank or other drawee to stop payment on the check or order;

    (2)  the bank or drawee refused payment to the holder on presentation of the check or order within 30 days after issue;

    (3)  the owner gave the actor notice of the refusal of payment and made a demand to the actor for payment or return of the property; and

    (4)  the actor failed to:

        (A)  pay the holder within 10 days after receiving the demand for payment; or

        (B)  return the property to the owner within 10 days after receiving the demand for return of the property.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1991, 72nd Leg., ch. 543 (H.B. 1801), § 2, effective September 1, 1991; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § 1.01, effective September 1, 1994; am. Acts 1995, 74th Leg., ch. 753 (H.B. 576), § 1, effective September 1, 1995; am. Acts 2007, 80th Leg., ch. 976 (S.B. 548), § 1, effective September 1, 2007; am. Acts 2013, 83rd Leg., ch. 128 (S.B. 821), §§ 1, 2, effective September 1, 2013.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

# Tex. Penal Code § 31.07

This document is current through the 2015 regular session, 84th Legislature.

## Sec. 31.07. Unauthorized Use of a Vehicle.

(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.

(b) An offense under this section is a state jail felony.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § 1.01, effective September 1, 1994.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.08

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis®* > *Penal Code* > *Title 7 Offenses Against Property* > *Chapter 31 Theft*

## Sec. 31.08. Value.

(a) Subject to the additional criteria of Subsections (b) and (c), value under this chapter is:

    (1) the fair market value of the property or service at the time and place of the offense; or

    (2) if the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the theft.

(b) The value of documents, other than those having a readily ascertainable market value, is:

    (1) the amount due and collectible at maturity less that part which has been satisfied, if the document constitutes evidence of a debt; or

    (2) the greatest amount of economic loss that the owner might reasonably suffer by virtue of loss of the document, if the document is other than evidence of a debt.

(c) If property or service has value that cannot be reasonably ascertained by the criteria set forth in Subsections (a) and (b), the property or service is deemed to have a value of $750 or more but less than $2,500.

(d) If the actor proves by a preponderance of the evidence that he gave consideration for or had a legal interest in the property or service stolen, the amount of the consideration or the value of the interest so proven shall be deducted from the value of the property or service ascertained under Subsection (a), (b), or (c) to determine value for purposes of this chapter.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1983, 68th Leg., ch. 497 (S.B. 283), § 5, effective September 1, 1983; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § *1.01*, effective September 1, 1994; am. Acts 2015, 84th Leg., ch. 1251 (H.B. 1396), § 12, effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

This document is current through the 2015 regular session, 84th Legislature.

## Sec. 31.09. Aggregation of Amounts Involved in Theft.

When amounts are obtained in violation of this chapter pursuant to one scheme or continuing course of conduct, whether from the same or several sources, the conduct may be considered as one offense and the amounts aggregated in determining the grade of the offense.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § *1.01*, effective September 1, 1994.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.10

This document is current through the 2015 regular session, 84th Legislature.

Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft

## Sec. 31.10. Actor's Interest in Property.

It is no defense to prosecution under this chapter that the actor has an interest in the property or service stolen if another person has the right of exclusive possession of the property.

## History

Enacted by Acts 1973, 63rd Leg., ch. 399 (S.B. 34), § 1, effective January 1, 1974; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § 1.01, effective September 1, 1994.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.11

This document is current through the 2015 regular session, 84th Legislature.

## Sec. 31.11. Tampering with Identification Numbers.

(a) A person commits an offense if the person:

    (1) knowingly or intentionally removes, alters, or obliterates the serial number or other permanent identification marking on tangible personal property; or

    (2) possesses, sells, or offers for sale tangible personal property and:

        (A) the actor knows that the serial number or other permanent identification marking has been removed, altered, or obliterated; or

        (B) a reasonable person in the position of the actor would have known that the serial number or other permanent identification marking has been removed, altered, or obliterated.

(b) It is an affirmative defense to prosecution under this section that the person was:

    (1) the owner or acting with the effective consent of the owner of the property involved;

    (2) a peace officer acting in the actual discharge of official duties; or

    (3) acting with respect to a number assigned to a vehicle by the Texas Department of Transportation or the Texas Department of Motor Vehicles, as applicable, and the person was:

        (A) in the actual discharge of official duties as an employee or agent of the department; or

        (B) in full compliance with the rules of the department as an applicant for an assigned number approved by the department.

(c) Property involved in a violation of this section may be treated as stolen for purposes of custody and disposition of the property.

(d) An offense under this section is a Class A misdemeanor.

(e) In this section, "vehicle" has the meaning given by *Section 541.201, Transportation Code*.

## History

Enacted by Acts 1979, 66th Leg., ch. 191 (S.B. 116), § 1, effective September 1, 1979; am. Acts 1983, 68th Leg., ch. 741 (H.B. 171), § 2, effective September 1, 1983; am. Acts 1991, 72nd Leg., ch. 113 (S.B. 589), § *1*, effective September 1, 1991; am. Acts 1993, 73rd Leg., ch. 900 (S.B. 1067), § *1.01*, effective September 1, 1994; am. Acts 1997, 75th Leg., ch. 165 (S.B. 898), § *30.239*, effective September 1, 1997; am. Acts 2009, 81st Leg., ch. 933 (H.B. 3097), § *3J.02*, effective September 1, 2009.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.12

This document is current through the 2015 regular session, 84th Legislature.

_Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft_

## Sec. 31.12. Theft of or Tampering with Multichannel Video or Information Services.

(a) A person commits an offense if, without the authorization of the multichannel video or information services provider, the person intentionally or knowingly:

    (1) makes or maintains a connection, whether physically, electrically, electronically, or inductively, to:

        (A) a cable, wire, or other component of or media attached to a multichannel video or information services system; or

        (B) a television set, videotape recorder, or other receiver attached to a multichannel video or information system;

    (2) attaches, causes to be attached, or maintains the attachment of a device to:

        (A) a cable, wire, or other component of or media attached to a multichannel video or information services system; or

        (B) a television set, videotape recorder, or other receiver attached to a multichannel video or information services system;

    (3) tampers with, modifies, or maintains a modification to a device installed by a multichannel video or information services provider; or

    (4) tampers with, modifies, or maintains a modification to an access device or uses that access device or any unauthorized access device to obtain services from a multichannel video or information services provider.

(b) In this section:

    (1) "Access device," "connection," and "device" mean an access device, connection, or device wholly or partly designed to make intelligible an encrypted, encoded, scrambled, or other nonstandard signal carried by a multichannel video or information services provider.

    (2) "Encrypted, encoded, scrambled, or other nonstandard signal" means any type of signal or transmission not intended to produce an intelligible program or service without the use of a device, signal, or information provided by a multichannel video or information services provider.

    (3) "Multichannel video or information services provider" means a licensed cable television system, video dialtone system, multichannel multipoint distribution services system, direct broadcast satellite system, or other system providing video or information services that are distributed by cable, wire, radio frequency, or other media.

(c) This section does not prohibit the manufacture, distribution, sale, or use of satellite receiving antennas that are otherwise permitted by state or federal law.

(d) An offense under this section is a Class C misdemeanor unless it is shown on the trial of the offense that the actor:

(1) has been previously convicted one time of an offense under this section, in which event the offense is a Class B misdemeanor, or convicted two or more times of an offense under this section, in which event the offense is a Class A misdemeanor; or

(2) committed the offense for remuneration, in which event the offense is a Class A misdemeanor, unless it is also shown on the trial of the offense that the actor has been previously convicted two or more times of an offense under this section, in which event the offense is a Class A misdemeanor with a minimum fine of $2,000 and a minimum term of confinement of 180 days.

(e) For the purposes of this section, each connection, attachment, modification, or act of tampering is a separate offense.

## History

Enacted by Acts 1995, 74th Leg., ch. 318 (S.B. 15), § _10_, effective September 1, 1995; am. Acts 1999, 76th Leg., ch. 858 (H.B. 1876), § _1_, effective September 1, 1999.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.13

This document is current through the 2015 regular session, 84th Legislature.

## Sec. 31.13. Manufacture, Distribution, or Advertisement of Multichannel Video or Information Services Device.

(a) A person commits an offense if the person for remuneration intentionally or knowingly manufactures, assembles, modifies, imports into the state, exports out of the state, distributes, advertises, or offers for sale, with an intent to aid in the commission of an offense under Section 31.12, a device, a kit or part for a device, or a plan for a system of components wholly or partly designed to make intelligible an encrypted, encoded, scrambled, or other nonstandard signal carried or caused by a multichannel video or information services provider.

(b) In this section, "device," "encrypted, encoded, scrambled, or other nonstandard signal," and "multichannel video or information services provider" have the meanings assigned by Section 31.12.

(c) This section does not prohibit the manufacture, distribution, advertisement, offer for sale, or use of satellite receiving antennas that are otherwise permitted by state or federal law.

(d) An offense under this section is a Class A misdemeanor.

## History

Enacted by Acts 1995, 74th Leg., ch. 318 (S.B. 15), § 10, effective September 1, 1995; am. Acts 1999, 76th Leg., ch. 858 (H.B. 1876), § 2, effective September 1, 1999.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

# _Tex. Penal Code § 31.14_

This document is current through the 2015 regular session, 84th Legislature.

_Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft_

## Sec. 31.14. Sale or Lease of Multichannel Video or Information Services Device.

(a) A person commits an offense if the person intentionally or knowingly sells or leases, with an intent to aid in the commission of an offense under Section 31.12, a device, a kit or part for a device, or a plan for a system of components wholly or partly designed to make intelligible an encrypted, encoded, scrambled, or other nonstandard signal carried or caused by a multichannel video or information services provider.

(b) In this section, "device," "encrypted, encoded, scrambled, or other nonstandard signal," and "multichannel video or information services provider" have the meanings assigned by Section 31.12.

(c) This section does not prohibit the sale or lease of satellite receiving antennas that are otherwise permitted by state or federal law without providing notice to the comptroller.

(d) An offense under this section is a Class A misdemeanor.

## History

Enacted by Acts 1999, 76th Leg., ch. 856 (H.B. 1876), § 3, effective September 1, 1999.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.15

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft*

## Sec. 31.15. Possession, Manufacture, or Distribution of Certain Instruments Used to Commit Retail Theft.

(a) [Repealed by Acts 2011, 82nd Leg., ch. 323 (H.B. 2482), § 4, effective September 1, 2011.]

(b) A person commits an offense if, with the intent to use the instrument to commit theft, the person:

   (1) possesses a shielding or deactivation instrument; or

   (2) knowingly manufactures, sells, offers for sale, or otherwise distributes a shielding or deactivation instrument.

(c) An offense under this section is a Class A misdemeanor.

## History

Enacted by Acts 2001, 77th Leg., ch. 109 (S.B. 966), § 1, effective September 1, 2001; am. Acts 2011, 82nd Leg., ch. 323 (H.B. 2482), § 4, effective September 1, 2011.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.16

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft*

## Sec. 31.16. Organized Retail Theft.

(a) [Repealed by Acts 2011, 82nd Leg., ch. 323 (H.B. 2482), § 4, effective September 1, 2011.]

(b) A person commits an offense if the person intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, or disposes of:

(1) stolen retail merchandise; or

(2) merchandise explicitly represented to the person as being stolen retail merchandise.

(c) An offense under this section is:

(1) a Class C misdemeanor if the total value of the merchandise involved in the activity is less than $100;

(2) a Class B misdemeanor if the total value of the merchandise involved in the activity is $100 or more but less than $750;

(3) a Class A misdemeanor if the total value of the merchandise involved in the activity is $750 or more but less than $2,500;

(4) a state jail felony if the total value of the merchandise involved in the activity is $2,500 or more but less than $30,000;

(5) a felony of the third degree if the total value of the merchandise involved in the activity is $30,000 or more but less than $150,000;

(6) a felony of the second degree if the total value of the merchandise involved in the activity is $150,000 or more but less than $300,000; or

(7) a felony of the first degree if the total value of the merchandise involved in the activity is $300,000 or more.

(d) An offense described for purposes of punishment by Subsections (c)(1)-(6) is increased to the next higher category of offense if it is shown on the trial of the offense that:

(1) the person organized, supervised, financed, or managed one or more other persons engaged in an activity described by Subsection (b); or

(2) during the commission of the offense, a person engaged in an activity described by Subsection (b) intentionally, knowingly, or recklessly:

(A) caused a fire exit alarm to sound or otherwise become activated;

(B) deactivated or otherwise prevented a fire exit alarm or retail theft detector from sounding; or

(C) used a shielding or deactivation instrument to prevent or attempt to prevent detection of the offense by a retail theft detector.

(e) [Repealed by Acts 2011, 82nd Leg., ch. 323 (H.B. 2482), § 4, effective September 1, 2011.]

## History

Enacted by Acts 2007, 80th Leg., ch. 1274 (H.B. 3584), § 1, effective September 1, 2007; am. Acts 2011, 82nd Leg., ch. 323 (H.B. 2482), §§ 3, 4, effective September 1, 2011; am. Acts 2015, 84th Leg., ch. 1251 (H.B. 1396), § 13, effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.17

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis® > Penal Code > Title 7 Offenses Against Property > Chapter 31 Theft*

## Sec. 31.17. Unauthorized Acquisition or Transfer of Certain Financial Information.

(a) In this section:

   (1) "Check" has the meaning assigned by *Section 3.104, Business & Commerce Code*.

   (2) "Credit card" and "debit card" have the meanings assigned by Section 32.31.

   (3) "Financial sight order or payment card information" means financial information that is:

   (A) contained on either side of a check or similar sight order, check card, debit card, or credit card; or

   (B) encoded on the magnetic strip or stripe of a check card, debit card, or credit card.

(b) A person commits an offense if the person, knowing that the person is not entitled to obtain or possess that financial information:

   (1) obtains the financial sight order or payment card information of another by use of an electronic, photographic, visual imaging, recording, or other device capable of accessing, reading, recording, capturing, copying, imaging, scanning, reproducing, or storing in any manner the financial sight order or payment card information; or

   (2) transfers to a third party information obtained as described by Subdivision (1).

(c) An offense under Subsection (b)(1) is a Class B misdemeanor. An offense under Subsection (b)(2) is a Class A misdemeanor.

(d) If conduct that constitutes an offense under this section also constitutes an offense under any other law, the actor may be prosecuted under this section or the other law.

## History

Enacted by Acts 2011, 82nd Leg., ch. 260 (H.B. 1215), § 1, effective September 1, 2011.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

## Tex. Penal Code § 31.18

This document is current through the 2015 regular session, 84th Legislature.

*Texas Statutes & Codes Annotated by LexisNexis®* > *Penal Code* > *Title 7 Offenses Against Property* > *Chapter 31 Theft*

## Sec. 31.18. Cargo Theft.

(a) In this section:

(1) "Cargo" means goods, as defined by Section 7.102, Business & Commerce Code, that constitute, wholly or partly, a commercial shipment of freight moving in commerce. A shipment is considered to be moving in commerce if the shipment is located at any point between the point of origin and the final point of destination regardless of any temporary stop that is made for the purpose of transshipment or otherwise.

(2) "Vehicle" has the meaning assigned by Section 541.201, Transportation Code.

(b) A person commits an offense if the person:

(1) knowingly or intentionally conducts, promotes, or facilitates an activity in which the person receives, possesses, conceals, stores, barters, sells, abandons, or disposes of:

(A) stolen cargo; or

(B) cargo explicitly represented to the person as being stolen cargo; or

(2) is employed as a driver lawfully contracted to transport a specific cargo by vehicle from a known point of origin to a known point of destination and, with the intent to conduct, promote, or facilitate an activity described by Subsection (b)(1), knowingly or intentionally:

(A) fails to deliver the entire cargo to the known point of destination as contracted; or

(B) causes the seal to be broken on the vehicle or on an intermodal container containing any part of the cargo.

(c) An offense under this section is:

(1) a state jail felony if the total value of the cargo involved in the activity is $1,500 or more but less than $10,000;

(2) a felony of the third degree if the total value of the cargo involved in the activity is $10,000 or more but less than $100,000;

(3) a felony of the second degree if the total value of the cargo involved in the activity is $100,000 or more but less than $200,000; or

(4) a felony of the first degree if the total value of the cargo involved in the activity is $200,000 or more.

(d) For purposes of Subsection (c), the total value of the cargo involved in the activity includes the value of any vehicle stolen or damaged in the course of the same criminal episode as the conduct that is the subject of the prosecution.

(e) An offense described for purposes of punishment by Subsections (c)(1)-(3) is increased to the next higher category of offense if it is shown on the trial of the offense that the person organized, supervised, financed, or managed one or more other persons engaged in an activity described by Subsection (b).

(f) It is not a defense to prosecution under this section that:

   (1) the offense occurred as a result of a deception or strategy on the part of a law enforcement agency, including the use of:

      (A) an undercover operative or peace officer; or

      (B) a bait vehicle;

   (2) the actor was provided by a law enforcement agency with a facility in which to commit the offense or with an opportunity to engage in conduct constituting the offense; or

   (3) the actor was solicited to commit the offense by a peace officer, and the solicitation was of a type that would encourage a person predisposed to commit the offense to actually commit the offense but would not encourage a person not predisposed to commit the offense to actually commit the offense.

## History

Enacted by Acts 2015, 84th Leg., ch. 1219 (S.B. 1828), § 3, effective September 1, 2015.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2017 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

End of Document

A-4

El Paso County - Probate Court 2

Filed 4/4/2017 11:53:10 AM
Delia Briones
County Clerk
El Paso County
2012-CPR03934

IN THE PROBATE COURT NO 2 OF

EL PASO COUNTY, TEXAS

TERI FINNEGAN, LEE CHAGRA, JR., and
JOANNA KRANCHER,

    Plaintiffs/Third-Party Defendants,

vs.

JAMES KIRBY READ, AS PERMANENT
DEPENDENT ADMINISTRATOR WITH WILL
AND CODICIL ANNEXED FOR THE ESTATE
OF EDWARD ABRAHAM, DECEASED,

    Defendant/Third-Party Plaintiff,

vs.

LESLIE C. KARAM, Individually,

    Third-Party Defendant.

and

GILBERT MALOOLY, Individually, and with
CHRIS MALOOLY, as Personal Representatives of
the Estate of Geraldine Malooly,

    Intervenors.

and

TINA CHAGRA,

    Intervenor,

v.

JAMES KIRBY READ, AS PERMANENT
DEPENDENT ADMINISTRATOR WITH WILL
AND CODICIL ANNEXED FOR THE ESTATE
OF EDWARD ABRAHAM, DECEASED

CAUSE NO. 2012-CPR03934

**DEFENDANT/THIRD-PARTY PLAINTIFF, JAMES KIRBY READ, SUCCESSOR
PERMANENT DEPENDENT ADMINISTRATOR WITH WILL AND CODICIL
ANNEXED FOR THE ESTATE OF EDWARD ABRAHAM, DECEASED'S
RESPONSE TO MALOOLY INTERVENORS' OBJECTIONS TO
JAMES KIRBY READ'S APPLICATION FOR A DISTRIBUTION OF
$12,000,000.00 TO THE EL PASO COMMUNITY FOUNDATION**

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, JAMES KIRBY READ, (Applicant"), Successor Permanent Dependent Administrator with Will and Codicil annexed of the Estate of EDWARD ABRAHAM ("Deceased"), and files this his Response to MALOOLY Intervenors' Objection to JAMES KIRBY READ's Application for a Distribution of $12,000,000.00 to the El Paso Community Foundation, and in support thereof would respectfully show the Court as follows:

## I.

## INTRODUCTION

The Objection of the MALOOLY Intervenors contains only Attorney Argument, and is **not** verified or supported by Affidavit or any other evidence. As of March 31st, 2017, the Estate's Safekeeping Account at WestStarBank had a current market value of $20,584,786.50 with **Cash** equivalents of $16,688,384.55.

## II.

## ARGUMENT

### A) <u>STANDING</u>

The MALOOLY Intervenors are attempting to relitigate the issue of standing previously determined by this Court. This Court previously ruled that the MALOOLY Intervenors do **not** have standing as Litigants to participate in issues of Estate Administration.

As an accommodation, however, this Court ruled that the MALOOLY Intervenors would be given the opportunity to be heard before the Court would approve any Partial Inheritance Distributions. Consequently, this Court has previously resolved the issue of standing, which the MALOOLY Intervenors want to keep re-litigating.

## B) TOLLING AND CONTINUING TORT DOCTRINE

The Objection of the MALOOLY Intervenors continues to assert tolling of limitations and the Continuing Tort Doctrine, without any mention of the exercise of Due Diligence on the part of the MALOOLY Intervenors, which is a requirement for such Tolling. Nor does the MALOOLY Intervenors' Objection ever mention that Mr. Gilbert Malooly was the **Managing Director** of the McRae and McCombs Property and as such, should have conducted a Title Search or otherwise acted prudently to determine the correct ownership interest of that property.

Accordingly, the Objection of the MALOOLY Intervenors is attempting to shift the fault for Mr. Gilbert Malooly's Breach of Fiduciary Duty, to the Decedent, who cannot defend himself.

Finally, while the MALOOLY Intervenors (and the Plaintiffs) repeatedly contend that the McCombs/McRae Properties were part of the Estate of Joseph Abraham, Sr., nowhere are such properties listed on that Estate's Inventory filed by the Successor Administrator, CHRIS MALOOLY and which is attached hereto as Exhibit "A" and incorporated herein.

## C) THE MALOOLY INTERVENORS CLAIM FOR PUNITIVE DAMAGES IS PURELY SPECULATIVE

Conspicuously absent from the Objection of the MALOOLY Intervenors is the disclosure that their own expert has calculated actual damages of less than $700,000.00 (such calculation was referred to in Plaintiffs' Objection to the Partial Inheritance Distribution). This omission is because there is no basis for the claim of the MALOOLY Intervenors that their monetary damages are "between $600,000.00 and $8,000,000.00" over a 20-year period. This Court has previously limited discovery to a 6-year period from when the Decedent passed away in 2012 and will most likely limit the Causes of Action of the MALOOLY Intervenors to that same 6 years period, particularly since there is no evidence that the MALOOLY Intervenors exercised any due diligence that would toll limitations. Consequently, the Objection of the MALOOLY Intervenors makes the Bootstrap

Argument for Punitive Damages based upon actual damages that they will never receive; nor is an award of punitive damages likely when Mr. Gilbert Malooly was the Managing Partner and it was he who misapplied Fiduciary property, rather than the Decedent. Finally, the claim for millions of dollars of punitive damages is just not realistic in the current environment in Texas, where Appellate Courts reverse or nullify such large awards. It may have worked thirty years ago, but not in 2017.

D) **THE EL PASO COMMUNITY FOUNDATION IS NOT REQUIRED TO POST A BOND TO PROTECT THE SPECULATIVE CLAIM OF THE MALOOLY INVESTORS.**

Without citing any Statutes or other Authority, the Objection of the MALOOLY Intervenors requests an adequate Bond to protect their Claims. Nowhere does the Texas Estates Code require a Devisee and Remainderman to post a Bond in connection with a Partial Inheritance Distribution. In fact, Section 53.052 of the Texas Estates Code refers to security for **costs** and **not** Inheritance Distributions, or to protect Speculative Claims.

## III.

## PRAYER

For the foregoing reasons, JAMES KIRBY READ, Successor Permanent Dependent Administrator with Will and Codicil Annexed of the Estate of EDWARD ABRAHAM, Deceased, requests the Court **deny and overrule** the MALOOLY Intervenors' Objection to JAMES KIRBY READ's Application for a Distribution of $12,000,000.00 to the El Paso Community Foundation, and all other relief to which he may be justly entitled.

Respectfully submitted,

_____
DARRON POWELL, Esq.
Attorney for Defendant/Third-Party Plaintiff
1517 Campbell
El Paso, Texas 79902
(915) 313-0081-Telephone
(915) 313-0091-Facsimile
State Bar No. 24027632

## CERTIFICATE OF SERVICE

I, DARRON POWELL, do hereby certify that I have delivered a true and correct copy of the foregoing to Plaintiffs/Third-Party Defendants, TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER, and to Intervenor, TINA CHAGRA by and through their Attorneys of Record, Joseph Isaac, Esq., and Sam J. Legate, Esq., SCHERR & LEGATE, PLLC., Attorneys at Law, 109 North Oregon, 12th, Floor, El Paso, Texas 79901, and Jerome M. Karam, Esq., Law Office of Jerome Karam, 308 W. Parkwood, Suite 104A, Friendswood, Texas 77546, and to Intervenor, GILBERT MALOOLY, by and through their Attorneys of Record, Mark C. Walker, Esq., DYKEMA COX SMITH, 221 North Kansas Street, Suite 2000, El Paso, Texas 79901 and to Thomas E. Stanton, Esq., 409 Oakcrest, Cedar Park, Texas 78613, and to James L. Anthony, Esq., Assistant Attorney General, Financial Litigation, Tax, and Charitable Trusts Division, Texas Attorney General's Office, 300 West 15th Street, 11th Floor, MC-017-11, P.O. Box 12548, Austin, Texas 78711-2548 on this the ___4___ day of ___April___, 2017.

_____
DARRON POWELL

Filed 3/1/2016 10:24:40 AM
Delia Briones
County Clerk
El Paso County
98-P00876

IN THE STATUTORY PROBATE COURT NO. ONE
EL PASO COUNTY, TEXAS

IN RE: §
THE ESTATE OF: §
§
JOSEPH ABRAHAM, SR., § CAUSE NO. 98-P00876
§
DECEASED. §

### INVENTORY, APPRAISEMENT, AND LIST OF CLAIMS

TO THE HONORABLE JUDGE OF SAID COURT:

The following is a full and detailed inventory of all real property of this Estate situated in the State of Texas and of all personal property of this Estate, wherever situated, which has come to the possession or knowledge of the Successor Administrator of the Estate; an appraisement of the fair market value of each item of that property as of September 14, 2015, the date of qualification of the Successor Dependent Administrator; and a full and complete list of all claims due or owing to the Estate. All property listed below is the separate property of the Decedent except where indicated otherwise.

### INVENTORY AND APPRAISEMENT

|  | APPRAISED VALUE | DECEDENT'S INTEREST |
|---|---|---|
| **REAL PROPERTY** |  |  |
| 13 MILLS 60 San Antonio X 122.667 Ft. on Oregon NWC (7360.20 SQ. FT.); more commonly known as 200 E. San Antonio Ave., El Paso, Texas. (2015 CAD appraised value) | $410,000.00 | $410,000.00 |



EXHIBIT " A "

C STEVENS 12 & W ½ of 11 & E ½ of 13 (6000 Sq. Ft.); more commonly known as 522 W. Missouri Ave., El Paso, Texas. (2015 CAD appraised value) — $58,000.00 — $58,000.00

80 TSP 2 SEC 36 T & P SURV TR 3 (8.785); more commonly known as Montana Ave., El Paso, Texas. (2015 CAD appraised value) — $650,000.00 — $325,000.00

78 TSP 2 SEC 4 T&P ABST 7221 TR 3 (3.5081 AC); more commonly known as Montana Ave., El Paso, Texas. (2015 CAD appraised value) — $100,856.00 — $100,856.00

A portion of NW ¼ of Section 14, Block 79, TSP3 Texas & Pacific Railway Company, El Paso, Texas. (2015 CAD appraised value) — $430,000.00 — $50,000.00

49, SUN CITY #11 LOT 1, Hudspeth County, Texas. (2015 Hudspeth appraised value) — $650.00 — $650.00

3 VALLEY RANCH LOT 5 (5.116 Acres); Hudspeth County, Texas. (2015 Hudspeth appraised value) — $615.00 — $615.00

## PERSONAL PROPERTY

Cash — $10,240.00 — $10,240.00

## CLAIMS IN FAVOR OF THE ESTATE:

None at this time.

## TOTAL VALUE OF ESTATE: — $955,361.00

A-5

Filed 4/4/2017 11:53:10 AM
Delia Briones
County Clerk
El Paso County
2012-CPR03934

IN THE PROBATE COURT NO 2 OF

EL PASO COUNTY, TEXAS

TERI FINNEGAN, LEE CHAGRA, JR., and
JOANNA KRANCHER,

    Plaintiffs/Third-Party Defendants,

vs.

JAMES KIRBY READ, AS PERMANENT
DEPENDENT ADMINISTRATOR WITH WILL
AND CODICIL ANNEXED FOR THE ESTATE
OF EDWARD ABRAHAM, DECEASED,

    Defendant/Third-Party Plaintiff,

vs.

LESLIE C. KARAM, Individually,

    Third-Party Defendant.

and

GILBERT MALOOLY, Individually, and with
CHRIS MALOOLY, as Personal Representatives of
the Estate of Geraldine Malooly,

    Intervenors.

and

TINA CHAGRA,

    Intervenor,

v.

JAMES KIRBY READ, AS PERMANENT
DEPENDENT ADMINISTRATOR WITH WILL
AND CODICIL ANNEXED FOR THE ESTATE
OF EDWARD ABRAHAM, DECEASED

CAUSE NO. 2012-CPR03934

**DEFENDANT/THIRD-PARTY PLAINTIFF, JAMES KIRBY READ, SUCCESSOR
PERMANENT DEPENDENT ADMINISTRATOR WITH WILL AND CODICIL
ANNEXED FOR THE ESTATE OF EDWARD ABRAHAM, DECEASED'S
RESPONSE TO PLAINTIFFS OBJECTIONS TO
JAMES KIRBY READ'S APPLICATION FOR A DISTRIBUTION OF
$12,000,000.00 TO THE EL PASO COMMUNITY FOUNDATION**

TO THE HONORABLE JUDGE OF SAID COURT:

**COMES NOW**, JAMES KIRBY READ, (Applicant"), Successor Permanent Dependent Administrator with Will and Codicil annexed of the Estate of EDWARD ABRAHAM ("Deceased"), and files this his Response to Plaintiffs' Objection to JAMES KIRBY READ's Application for a Distribution of $12,000,000.00 to the El Paso Community Foundation, and in support thereof would respectfully show the Court as follows:

## I.

## INTRODUCTION

The Objection of the Plaintiffs contains only Attorney Argument, and is **not** verified or supported by Affidavit or any other evidence. As of March 31st, 2017, the Estate's Safekeeping Account at WestStarBank had a current market value of $20,584,786.50 with **Cash** equivalents of $16,688,384.55.

## II.

## ARGUMENT

### A) STANDING

The Plaintiffs are attempting to relitigate the issue of standing previously determined by this Court. This Court previously ruled that the Plaintiffs do **not** have standing as Litigants to participate in issues of Estate Administration.

As an accommodation, however, this Court ruled that the Plaintiffs would be given the opportunity to be heard before the Court would approve any Partial Inheritance Distributions. Consequently, this Court has previously resolved the issue of standing, which the Plaintiffs want to keep re-litigating.

## B) TOLLING AND CONTINUING TORT DOCTRINE

The Objection of the Plaintiffs continues to assert tolling of limitations and the Continuing Tort Doctrine, without any mention of the exercise of Due Diligence on the part of the Plaintiffs, which is a requirement for such Tolling. Nor does the Plaintiffs' Objection ever mention that Mr. Gilbert Malooly was the **Managing Director** of the McRae and McCombs Property and as such, should have conducted a Title Search or otherwise acted prudently to determine the correct ownership interest of that property; nor have Plaintiffs cross-claimed against Mr. Gilbert Malooly for misapplication of Fiduciary property and the Breach of Fiduciary Duty.

Accordingly, the Objection of the Plaintiffs is attempting to shift the fault for Mr. Gilbert Malooly's Breach of Fiduciary Duty and target the Decedent, who cannot defend himself.

Finally, while the Plaintiffs (and the Malooly Intervenors) repeatedly contend that the McCombs/McRae Properties were part of the Estate of Joseph Abraham, Sr., nowhere are such properties listed on that Estate's Inventory filed by the Successor Administrator, CHRIS MALOOLY and which is attached hereto as Exhibit "A" and incorporated herein.

## C) THE PLAINTIFFS CLAIM FOR PUNITIVE DAMAGES IS PURELY SPECULATIVE

Conspicuously absent from the Objection of the Plaintiffs is the disclosure that their own expert has calculated actual damages of less than $700,000.00. This omission is because there is no basis for the claim of the Plaintiffs that their monetary damages are "between $9,062,500.00 and $30,000,000.00" over a 25-year period. This Court has previously limited discovery to a 6-year period from when the Decedent passed away in 2012 and will most likely limit the Causes of Action of the Plaintiffs to that same 6 years period, particularly since there is no evidence that the Plaintiffs

exercised any due diligence that would toll limitations. Consequently, the Objection of the Plaintiffs makes the Bootstrap Argument for Punitive Damages based upon actual damages that they will never receive; nor is an award of punitive damages likely when Mr. Gilbert Malooly was the Managing Partner of the McCombs/McRae Properties and it was he who misapplied Fiduciary property, rather than the Decedent. Finally, the claim for millions of dollars of punitive damages is just not realistic in the current environment in Texas, where Appellate Courts reverse or nullify such large awards. It may have worked thirty years ago, but not in 2017.

### D) <u>THE EL PASO COMMUNITY FOUNDATION IS NOT REQUIRED TO POST A BOND TO PROTECT THE SPECULATIVE CLAIM OF THE MALOOLY INVESTORS.</u>

Without citing any Statutes or other Authority, the Objection of the Plaintiffs requests an adequate Bond to protect their Claims. Nowhere does the Texas Estates Code require a Devisee and Remainderman to post a Bond in connection with a Partial Inheritance Distribution. In fact, Section 53.052 of the Texas Estates Code refers to security for **costs** and **not** Inheritance Distributions, or to protect Speculative Claims.

### III.

### PRAYER

For the foregoing reasons, JAMES KIRBY READ, Successor Permanent Dependent Administrator with Will and Codicil Annexed of the Estate of EDWARD ABRAHAM, Deceased, requests the Court **deny and overrule** the Plaintiffs' Objection to JAMES KIRBY READ's Application for a Distribution of $12,000,000.00 to the El Paso Community Foundation, and all other relief to which he may be justly entitled.

Respectfully submitted,

_____
DARRON POWELL, Esq.
Attorney for Defendant/Third-Party Plaintiff
1517 Campbell
El Paso, Texas 79902
(915) 313-0081-Telephone
(915) 313-0091-Facsimile
State Bar No. 24027632

## CERTIFICATE OF SERVICE

I, DARRON POWELL, do hereby certify that I have delivered a true and correct copy of the foregoing to Plaintiffs/Third-Party Defendants, TERI FINNEGAN, LEE CHAGRA, JR., and JOANNA KRANCHER, and to Intervenor, TINA CHAGRA by and through their Attorneys of Record, Joseph Isaac, Esq., and Sam J. Legate, Esq., SCHERR & LEGATE, PLLC., Attorneys at Law, 109 North Oregon, 12th, Floor, El Paso, Texas 79901, and Jerome M. Karam, Esq., Law Office of Jerome Karam, 308 W. Parkwood, Suite 104A, Friendswood, Texas 77546, and to Intervenor, GILBERT MALOOLY, by and through their Attorneys of Record, Mark C. Walker, Esq., DYKEMA COX SMITH, 221 North Kansas Street, Suite 2000, El Paso, Texas 79901 and to Thomas E. Stanton, Esq., 409 Oakcrest, Cedar Park, Texas 78613, and to James L. Anthony, Esq., Assistant Attorney General, Financial Litigation, Tax, and Charitable Trusts Division, Texas Attorney General's Office, 300 West 15th Street, 11th Floor, MC-017-11, P.O. Box 12548, Austin, Texas 78711-2548 on this the ____4____ day of ____April____, 2017.

_____
DARRON POWELL

El Paso County - Probate Court 1

Filed 3/1/2016 10:24:40 AM
Delia Briones
County Clerk
El Paso County
98-P00876

IN THE STATUTORY PROBATE COURT NO. ONE
EL PASO COUNTY, TEXAS

IN RE:
THE ESTATE OF:                          §
                                        §
JOSEPH ABRAHAM, SR.,                    §        CAUSE NO. 98-P00876
                                        §
DECEASED.                               §
                                        §

### INVENTORY, APPRAISEMENT, AND LIST OF CLAIMS

TO THE HONORABLE JUDGE OF SAID COURT:

The following is a full and detailed inventory of all real property of this Estate situated in the State of Texas and of all personal property of this Estate, wherever situated, which has come to the possession or knowledge of the Successor Administrator of the Estate; an appraisement of the fair market value of each item of that property as of September 14, 2015, the date of qualification of the Successor Dependent Administrator; and a full and complete list of all claims due or owing to the Estate. All property listed below is the separate property of the Decedent except where indicated otherwise.

### INVENTORY AND APPRAISEMENT

|  | APPRAISED VALUE | DECEDENT'S INTEREST |
|---|---|---|
| **REAL PROPERTY** | | |
| 13 MILLS 60 San Antonio X 122.667 Ft. on Oregon NWC (7360.20 SQ. FT.); more commonly known as 200 E. San Antonio Ave., El Paso, Texas. (2015 CAD appraised value) | $410,000.00 | $410,000.00 |



EXHIBIT " A "

C STEVENS 12 & W ½ of 11 & E ½ of 13 (6000 Sq. Ft.); more commonly known as 522 W. Missouri Ave., El Paso, Texas. (2015 CAD appraised value)   $58,000.00   $58,000.00

80 TSP 2 SEC 36 T & P SURV TR 3 (8.785); more commonly known as Montana Ave., El Paso, Texas. (2015 CAD appraised value)   $650,000.00   $325,000.00

78 TSP 2 SEC 4 T&P ABST 7221 TR 3 (3.5081 AC); more commonly known as Montana Ave., El Paso, Texas. (2015 CAD appraised value)   $100,856.00   $100,856.00

A portion of NW ¼ of Section 14, Block 79, TSP3 Texas & Pacific Railway Company, El Paso, Texas. (2015 CAD appraised value)   $430,000.00   $50,000.00

49, SUN CITY #11 LOT 1, Hudspeth County, Texas. (2015 Hudspeth appraised value)   $650.00   $650.00

3 VALLEY RANCH LOT 5 (5.116 Acres); Hudspeth County, Texas. (2015 Hudspeth appraised value)   $615.00   $615.00

## PERSONAL PROPERTY

Cash   $10,240.00   $10,240.00

## CLAIMS IN FAVOR OF THE ESTATE:

None at this time.

## TOTAL VALUE OF ESTATE:   $955,361.00

WHEREFORE, the Successor Dependent Administrator prays that the Inventory, Appraisement, and List of Claims be approved and ordered entered of record.

Respectfully submitted,

**Burton Cohen**
Attorneys for Applicant
501 Executive Center Blvd., Suite 200
El Paso, Texas 79902
(915) 533-2739 – Telephone
(915) 544-6712 – Facsimile
bcohen@neillmoodylaw.com

By _____
**BURTON COHEN**
Texas Bar Number: 04507300

## VERIFICATION

STATE OF TEXAS　　　　　　　　§
　　　　　　　　　　　　　　　§
COUNTY OF EL PASO　　　　　　§

I, **RONALD CHRISTOPHER MALOOLY** do solemnly swear that the Inventory, Appraisement, and List of Claims is a true and complete statement of the property and claims of the estate that have come to my knowledge.

**RONALD CHRISTOPHER MALOOLY**
Successor Dependent Administrator

SUBSCRIBED AND SWORN TO BEFORE ME by RONALD CHRISTOPHER MALOOLY, on this the 1st day of March, 2016, to certify which witness my hand and official seal.

DIANA PEREZ
ID# 125973598
NOTARY PUBLIC
in and for the State of Texas
My commission expires
01-22-2019

NOTARY PUBLIC IN AND FOR
THE STATE OF TEXAS
My Commission Expires: 1-22-19